**Adai LESER and Czali Leser, Appellants,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 19093.**

United States Court of Appeals
Ninth Circuit.

March 19, 1966.

Rehearing Denied April 20, 1966.

See also 9 Cir., 335 F.2d 832, D.C., 233 F.Supp. 535.

Morris Lavine, Los Angeles, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim.Div., Los Angeles, Cal., for appellee.

Before JERTBERG and MERRILL, Circuit Judges, and TAVARES, District Judge.

JERTBERG, Circuit Judge:

Following seven weeks of trial to a jury, productive of a reporter's transcript of more than 4,000 pages, together with many documentary exhibits, the appellants were convicted on thirty-one counts of a thirty-five count indictment.

Conviction was on Counts One to Three, Five, Six, Eight to Twenty-seven, inclusive, and Thirty to Thirty-five, inclusive. Count One charged a violation of 18 U.S.C. § 1341 [Mail Fraud]. Counts Two, Three, Five, Six, and Eight to Twelve, inclusive, each charged separate violations of 18 U.S.C. § 1341, and specified individual mailings in pursuance of the scheme and artifice set forth in Count One of the indictment. Counts Thirteen to Twenty-three, inclusive, charged violations of 18 U.S.C. § 1343

[Fraud by wire], each count specifying and setting forth particular telegrams submitted for the purpose of executing the scheme and artifice alleged in Count One.

Counts Twenty-four to Twenty-seven, inclusive, charged the transmission by means of Western Union Bank wire of various sums of money for the purpose of executing the scheme and artifice set out in Count One, in violation of 18 U.S.C. § 1343.

Counts Thirty to Thirty-five, inclusive, charged the defendants with interstate transportation of various sums of money, knowing the same to have been obtained and taken by fraud, in violation of 18 U.S.C. § 2314 [Transportation in interstate and foreign commerce of money or securities, etc., of a value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud].

Appellants specify many errors as having occurred during the long and protracted trial. We have reviewed all of them in the light of the record and have reached the conclusion all of them are without substance except the three which we will discuss in this opinion. These three are:

1. That the District Court erred in discharging one of the original twelve jurors after the jury had retired to deliberate but prior to the return of the verdict, and replacing such juror with an alternate juror.

2. That the action of the District Court referred to in 1. above, placed the appellants in double jeopardy.

3. That in connection with the action of the District Court, stated in 1. above, the District Court unlawfully communicated with the jury thereby depriving the appellants of a fair trial.

Appellants contend that the actions of the District Court, as above set forth, violated the constitutional right of appellants to be tried by a common law jury of twelve as required by the Sixth Amendment, violated Rules 23(b) and 24(c) of the Federal Rules of Criminal Procedure, placed appellants twice in jeopardy in violation of the Fifth Amendment, and deprived appellants of a fair trial.

In order to bring appellants' contention into focus it is necessary to review at some length the events which occurred in the District Court.

On October 31, 1963, the day before the case was submitted to the jury for consideration, the Court noted for the first time as follows:

"All I want to know is to give the jury some idea about when they can get the case. One of the jurors is under commitment to go to a hospital tomorrow for a very serious surgical operation, but he stated that he would, if we can finish the argument today, we can look forward to getting it to the jury tomorrow, that he would postpone it."

Later in the day the Court again raised the subject of the juror's imminent medical appointment:

"I spoke to you or mentioned to you that one of the jurors had an appointment to go into the hospital tomorrow for an emergency operation of a very serious nature, which will involve the removal of a growth which is visible, and which is affecting his voice and his breathing. He stated that he would postpone it if the case could go to the jury tomorrow.

"I wanted to call your attention to the provisions of Rule 24(c) about alternate jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.

"As it appears now, I do not think I will instruct the jury tonight, although if you do not take over 15 minutes I possibly could. But it would be at the end of a day when they have been listening to argument, and I think it is much better that the case be given to them in the morning, and I had anticipated instructing them at 9:30.

"We have three alternate jurors. In another case where we had, I believe, six alternate jurors in that case, it took many months to try, it was not a criminal case, but the same provision applies, and we had to first get a verdict on the question of liability, and then 21 separate verdicts, each time on the question of the amount of damages. So the question was what shall we do with the alternates, and the parties all stipulated that the alternates would remain in attendance and available until the verdict was reached, rather than discharging them after the jury retires.

"I am not urging that the defendants or the government make such a stipulation. I am simply suggesting that, because if the case goes to the jury tomorrow, none of us have any way of knowing how quickly they will decide it. It may be that they will come to a conclusion very promptly, and it may be possible that they may get into some discussion which will require me keeping them, for instance, over the week end, and in that case I would not feel right in keeping the juror, who is Juror Swan.

"MR. CARUSO: We offer to stipulate, your Honor, that the alternate jurors remain in attendance, and naturally they will not participate in the deliberations, and if any juror becomes ill or unable to participate in the deliberations of the case, that—

"THE COURT: After retiring?

"MR. CARUSO: —after retiring, that the first alternate juror, in order of their being named alternates, succeed to the position of the juror who is unable to further participate. And that we will continue that stipulation until a verdict has been arrived at with respect to all counts.

"THE COURT: Does the government so stipulate?

"MR. WHELAN: So stipulated.

"THE COURT: All right."

On Friday, November 1, 1963, the case was submitted to the jury at approximately 10:45 A.M. Immediately prior to the submission to the jury, the Court commented:

"The parties have stipulated that the alternates instead of being excused and being sent home at this time will stand by just in case somebody gets ill. This has been a long case, it has cost the Government and the defendants a great deal of money, and for that reason we should try and have a verdict."

Whereupon, the members of the jury retired to a jury room for deliberations and the three alternate jurors retired to another jury room.

At approximately 3:55 P.M., on November 1, 1963, the jury returned to the courtroom to submit an inquiry to the Court. After answering the inquiry, the Court stated:

"THE COURT: Now, Mr. Swan, your wife called and said your room is ready at the hospital and you should be there around 5:00 p. m., but if there is some likelihood that the jury can arrive at a verdict on all of the counts I will not excuse you now because I know that if you are not there at 5:00 all you will miss will be a terrible hospital dinner, having been in quite a few times myself.

"JUROR SWAN: Why don't you give us a little while, your Honor, and then looking at and reviewing the counts in this manner maybe we can proceed a little faster."

Later on in the same proceeding, after a conference with Mr. Swan, Foreman Liggett stated:

"FOREMAN LIGGETT: Mr. Swan and I both feel, your Honor, in considering further this possibility, that we won't be done by 5:00 o'clock in time for him to leave, or 6:00.

"THE COURT: That you will?

"FOREMAN LIGGETT: That we may not. It might be wise if you would consider installing the alternate juror now.

"THE COURT: Well, I would think that if Mr. Swan, if you could be through by 6:00 o'clock, that Mr.

Swan could still make his hospital appointment.

"MR. SWAN: There is no doubt about it.

"THE COURT: So if you would prefer to—

"FOREMAN LIGGETT: It is hard to say.

"THE COURT: I don't want to impose any hardship on Mr. Swan.

"MR. BRANDENBURG: If your Honor pleases, I think in deference to Mr. Swan in view of his condition I have no objection on behalf of the defendants in complying with the court's suggestion of yesterday that we substitute an alternate.

"THE COURT: Let me make this suggestion, that you go on back upstairs and if within, say, the next 35 or 40 minutes it looks like you are not going to be through by 6:00 o'clock you let me know and Mr. Swan will just walk out and I will install—you will stipulate that I may then excuse him if he will come down and let me know and I will send word to Mr.—

"ALTERNATE CHOLCHER: Cholcher.

"THE COURT: —Cholcher for you to step in and become one of the jurors to pick up with the deliberations from there on.

"FOREMAN LIGGETT: Thank you.

"THE COURT: All right. The jury may retire.

(Whereupon, at 4:15 o'clock p. m., the jury retired for further deliberations.)"

After 5:40 P.M., on November 1, in open court outside the presence of the jury and in the presence of the defendants and their counsel, the court advised those present:

"THE COURT: * * *

"The bailiff just informed me that the jury has sent word down that they would like to deliberate until 7:00 o'clock and then go to dinner and then return and see if they can complete their deliberations tonight. * * *

"So I wanted to let counsel and the defendants know that until 7:00 o'clock—I don't think you will have a verdict until 7:00—in the meantime Mr. Swan unfortunately, I am very sorry to say, he has been obviously getting worse the last two or three days, had to leave and the alternate juror has been substituted."

At approximately 10:30 P.M., the jury returned with the guilty verdict.

Rule 23(b) of Federal Rules of Criminal Procedure provides that juries shall be twelve but at any time before verdict the parties may stipulate in writing, with the approval of the court, that the jury shall consist of any number less than twelve.

Rule 24(c) Federal Rules of Criminal Procedure, dealing with alternate jurors, in relevant part provides:

"Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. * * * An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

In Robinson v. United States,[1] 144 F. 2d 392 (6th Cir. 1944), one additional juror was selected as an alternate under the provisions of 28 U.S.C. § 417a.[2] The jury and the alternate were sworn and the trial proceeded. During its progress

1. [C.D. 323 U.S. 789, 65 S.Ct. 311, 89 L.Ed. 629; Rehrg. Granted and order denying certiorari vacated, and petition for certiorari granted limited to sole question of the District Court's statutory authority to impose the death sentence, 323 U.S. 808, 65 S.Ct. 552, 89 L. Ed. 644; Judgment affirmed, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945).]

2. Rule 24(c) embodies 28 U.S.C. § 417a, except that the number of possible alternate jurors that may be empaneled is increased from two to four, with a corresponding adjustment of challenges.

a juror became ill and unable to continue. The ill juror was discharged and the alternate juror, without objection, took the ill juror's place in the jury box. The appellant in that case contended on appeal that the alternate juror's participation as a juror was unlawful because the statute under which he was selected was an invasion of appellant's constitutional right to trial by a jury of twelve as provided by the Sixth Amendment, and by Article III, Section 2, Clause 3 of the Constitution. The court stated at page 397:

"We find no merit in appellant's contention, first, because it appears that he was tried by an impartial jury of twelve. Miller was a competent juror, was unchallenged upon any ground of personal disqualification, sat next to the jury box until he was substituted as a regular juror, and then took his place as such. He saw and heard all the proceedings of the trial and was segregated with the other jurors, and there is nothing to indicate that his participation in the deliberations of the jury was prejudicial. He obeyed the orders and admonitions of the court, just as did the other jurors. This is the first attack upon the constitutionality of the Act in question and we find no reason to think that it is unconstitutional. It is a forward looking statute and a needed reform in procedure. A similar statute has been upheld by the Supreme Court of North Carolina in State v. Dalton, 206 N.C. 507, 174 S.E. 422."

In the instant case the alternate juror was substituted as a juror in the place of an ill juror after the jury had commenced its deliberations, which fact appellants contend distinguish this case from *Robinson*. The District Court had explained the requirement of Rule 24(c), the problem presented by the ailing juror, and then suggested that Rule 24(c) might be waived. Counsel for appellants assented to the suggestion. One of them composed the stipulation on October 31, 1963, while the other counsel for appellants proposed that it be put into effect on November 1, 1963. Appellants were present during all of the discussions and voiced no objection. Appellants do not contend that they did not comprehend the stipulation which was certainly intelligible to any person of ordinary understanding. No showing is made that they suffered any prejudice. The District Court did not urge that the parties enter into the stipulation. They had every opportunity to refuse to do so. Appellants do not question the fact that their counsel expressly consented and stipulated to the procedure which was adopted by the District Court but contend " * * * a stipulation by counsel is ineffective without the accused's *specific* assent thereto." The objection is voiced for the first time on this appeal by counsel who has been substituted for counsel who represented appellants in the District Court.

In our view the record fully establishes that the appellants knowingly and intelligently acquiesced in the voluntary stipulation of their counsel. We believe that the stipulation entered into by appellants' counsel in the presence of the appellants, who expressed no dissent therefrom, is effective and binding upon the appellants. See Eury v. Huff, 141 F.2d 554 (4th Cir. 1944); United States v. Sorrentino, 175 F.2d 721 (3d Cir. 1949); Cruzado v. People v. Puerto Rico, 210 F.2d 789 (1st Cir. 1954).

In support of the contention that the stipulation in which appellants acquiesced is ineffective, appellants rely on Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263 (1960); Himmelfarb v. United States, 175 F.2d 924 (9th Cir. 1949); and United States v. Virginia Erection Corporation, 335 F.2d 868 (4th Cir. 1964).

In *Patton*, after several days of trial, one of the jurors became ill, and unable to serve further as a juror. Counsel for the defendants and the government stipulated in open court that the case should proceed with the remaining eleven jurors. The defendants personally assented and the trial court approved the stipulation. The Supreme Court held, at p.

312, of 281 U.S. at p. 263 of 50 S.Ct., that the defendants had waived their right to a constitutional jury of twelve, but made it clear that "before any waiver could become effective, the consent of the government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant."

Expressions appearing in *Himmelfarb* to the effect that a defendant's specific assent is required before a constitutional right can be waived, are *dicta*. See Eury v. Huff, supra; United States v. Sorrentino, supra; Cruzado v. People of Puerto Rico, supra.

In United States v. Virginia Erection Corporation, it appears that during final arguments of counsel, one of the twelve regular jurors gave evidence of being ill. The District Court permitted an alternate juror to retire with the jury. The record seems to indicate that counsel for both the government and the defendants agreed to this procedure although there is nothing in the record to show that the defendants personally consented to the arrangement. The alternate juror was admonished by the court not to participate in the deliberations of the jury and to say nothing unless one of the regular jurors should become ill. The alternate juror remained with the twelve regular jurors throughout their deliberations. In the course of its opinion the court stated, at page 872:

"* * *, the presence of the alternate in the jury room violated the cardinal principle that the deliberations of the jury shall remain private and secret in every case. The presence of any person other than the jurors to whom the case has been submitted for decision impinges upon that privacy and secrecy. It is possible that Sublett's [alternate juror] presence may

have operated to some extent as a restraint upon the jurors and their freedom of action and expression." [Footnote omitted].

The judgment of conviction was reversed and the cause remanded for a new trial.

In the instant case there is nothing in the record to suggest that more than twelve jurors were present during the deliberations of the jury.

■ In our view there is no substance to appellants' contention that they were twice placed in jeopardy. Appellants underwent but one trial. There was but one verdict. We believe the stipulation entered into by their counsel, in which appellants knowingly and understandingly acquiesced, waives any claim on their part that they had been twice placed in jeopardy.

■ We believe that there is no merit in appellants' contention that they were deprived of a fair trial because of claimed unlawful communication between the District Court and the jury. The record discloses that the District Court informed counsel that it would dismiss the ill juror and substitute the alternate juror as soon as the court was notified that the ill juror was compelled to leave for the hospital. This procedure was approved and consented to by appellants' counsel, and acquiesced in by the appellants. When the District Court notified the parties that the alternate juror had been substituted no objection was raised to this procedure. Whatever communication may have occurred between the court and the jury in the substitution of the alternate juror was clearly contemplated by the stipulation. We are unable to say that appellants were in any wise prejudiced.

The judgment of conviction is affirmed.