**UNITED STATES of America,**
**Appellee,**

**v.**

**Leon NASH, Appellant.**

**No. 701, Docket 33589.**

United States Court of Appeals
Second Circuit.

Argued June 13, 1969.

Decided July 14, 1969.

Certiorari Denied Nov. 24, 1969.
See 90 S.Ct. 375.

Jerome J. Londin, New York City (Carro, Spanbock & Londin, and Allen Green, New York City, of counsel), for appellant.

Frank M. Tuerkheimer, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, and Charles P. Sifton, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Leon Nash appeals from an order of the United States District Court denying his motion to set aside a verdict against him which resulted in his conviction on five counts of an indictment charging him with conspiracy to sell unregistered stock and with the sale of stock by fraud. He was sentenced to concurrent terms of one year and one day and fined $500. His conviction was affirmed by this Court. United States v. Hayurtin, 398 F.2d 944 (2d Cir. 1968).

Thereafter, Nash moved to set aside the verdict on the ground that the alternate jurors had not been discharged in accordance with Rule 24(c) of the Federal Rules of Criminal Procedure. A hearing on his motion was held and his motion denied.

Nash claims that he was denied a fair trial because, as he alleges, there were communications between members of the regular jury and retained alternates during the jury deliberations. The court below, after three days of hearings, found:

"1. There is no credible evidence that during the three days of the jury deliberations any communications or conversations took place between the regular jury and the alternates, save for possibly an occasional distant wave or common salutation of greeting as the regular jurors and the alternate jurors went their respective ways in the restaurants at which they had their meals.

"2. The directions of the court for segregation of the regular jurors and retained alternates during deliberations were maintained by the marshals throughout the deliberations in the court house and outside thereof at

such places as restaurants and in the hotel where the jurors were sequested [sic] during the nights.

"3. There is not a scintilla of evidence that the defendant Leon Nash was prejudiced by anything which occurred or failed to occur during the deliberations of the jury."

 The record amply supports the District Court's findings. However, Nash argues that, even accepting the court's findings, he "ran the risk of having his guilt determined by the three alternates in addition to the regular jurors" because the trial judge at his criminal trial did not dismiss the alternates after the regular jurors retired to consider the verdict. In short, he contends that he was prejudiced *per se* by the failure to discharge the alternates. Yet, this court in affirming his conviction rejected this very contention. 398 F.2d at 950, 951. The risk this court was referring to, *id.* at 950, was the risk of impermissible contact. The record is barren of any prejudicial contact. Nash cannot be found to have run the risk of having his guilt determined by anyone other than the twelve regular jurors.

United States v. Virginia Erection Corp., 335 F.2d 868 (4th Cir. 1964), cited by appellant, is inapposite. In that case an alternate juror spent the entire period during jury deliberations in the jury room with the twelve regular jurors and was, therefore, in a position to influence discussion and deliberation. Such contact, in fact any significant contact, is absent here.

■■ Finally, Nash challenges three discretionary rulings by the District Court (1) limiting the hearing to the possible contact between alternates and regulars during deliberations and prohibiting inquiry into such contacts *prior* to deliberations, (2) preventing Nash's lawyer from inquiring into the substance of a telephone call between one of the alternates and a regular juror *prior to the hearing*, and (3) ending the hearing before the third alternate could be called. The record indicates that the scope of inquiry was properly restricted by the court below which sought to prevent unnecessary fishing expeditions by appellant's lawyer and improper efforts to undermine the jury's verdict. Since the claimed prejudice was the alleged impairment of the jury's deliberations, rulings (1) and (2) were clearly correct. The challenged telephone conversation between a regular juror and an alternate occurred after the trial had ended but before the hearing below. The claim that the hearing was prematurely terminated is without substance. The fact is that no offer of proof was made as to what the testimony of the third alternate would have been and the judge was well within his discretion in concluding that her testimony would have been cumulative. Significantly, after the examination of the last witness was concluded, Nash's lawyer, after conferring with his client, informed the court he had no further witnesses. It was only after the judge reminded him about the third alternate that he stated he wished to call her. The statement that Nash's counsel had no other witnesses and the absence of any offer of proof as to the significance of that testimony completely rebut the contention that the court below exceeded its discretion in terminating the hearing when it did.

Affirmed.