**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Corre LAMB, Jr.,
Defendant-Appellant.**

**No. 74–2406.**

United States Court of Appeals,
Ninth Circuit.

Dec. 29, 1975.

Nicholas R. Allis (argued), Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

W. Michael Mayock, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before CHAMBERS, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED and KENNEDY, Circuit Judges.

ELY, Circuit Judge:

The appellant, in his third trial, was convicted of the offense of bank robbery. 18 U.S.C. § 2113(a), (d). In urging reversal, the appellant presents several contentions, only one of which need now be reached. This is the contention, with which we agree, that reversal is required because of the failure of the District Court to comply with the plain requirements of Fed.R.Crim.P. 24(c). The circumstances giving validity to this contention are briefly and accurately summarized as follows:

After instructing the jury, the district judge told an alternate juror that she

was excused and would be permitted to go home, but asked her to "stand by" in case it was "necessary for [her] to come in." After almost four hours of deliberation spread over two days, the jury returned a verdict of guilty. The judge refused to accept the verdict because of his belief that the verdict was inconsistent with the instructions.

■ The district judge then announced that when he returned from a luncheon recess he found a note from one of the jurors, which stated:

"Your Honor, due to the sudden accidental death of one of my close coworkers during the course of this trial, I feel emotionally unable to come to a decision."

The district judge then remarked that at the time he received the note he called the alternate juror and asked her to return to court, but that, when he was later told that the jury had reached a verdict, he had called the alternate back and told her by telephone not to return. But after questioning the original juror who wrote the note, the district judge excused the note-writing juror and asked defense counsel if it would be agreeable to him that the alternate juror be substituted. Defense counsel objected to this procedure and promptly made a motion for a mistrial, which was denied. Over defense counsel's objection, the alternate juror joined the jury upon her arrival an

hour later. The instructions were then reread, and the court advised the jury to "begin at the beginning, and begin all your deliberations just as if the case had been submitted to you this instant." After twenty-nine minutes of deliberation, the newly constituted jury found the appellant guilty a second time.

Fed.R.Crim.P. 24(c) states in pertinent part:

"Alternate jurors in the order in which they are called shall replace jurors who, *prior to the time the jury retires* to consider its verdict, become or are found to be unable or disqualified to perform their duties. . . . An alternate juror who does not replace a regular juror *shall be discharged* after the jury retires to consider its verdict. . . ." (Emphasis added.)

Two other Courts of Appeals that have considered the question have held that the requirement that the alternate *shall be discharged* after the jury retires is a "mandatory" requirement that should be followed because ". . . any benefit to be derived from deviating from the Rule is unclear and the possibility of prejudice so great." *United States v. Allison,* 481 F.2d 468, 472 (5th Cir. 1973), *subsequent appeal,* 487 F.2d 339 (5th Cir. 1973), *cert. denied,* 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974);[1] *United States v. Hayutin,* 398 F.2d 944 (2d Cir.), *cert. denied,* 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968),[2] *subsequent appeal*

---

1. In *Allison,* the court wrote:

"The provision of Rule 24(c) that an alternate juror who does not replace a regular juror 'shall be discharged after the jury retires to consider its verdict' is a mandatory requirement that should be scrupulously followed. Because any benefit to be derived from deviating from the Rule is unclear and the possibility of prejudice so great, it is foolhardy to depart from the explicit command of Rule 24. Moreover, there is no rule providing that the parties, or the district court, may stipulate that an alternate be present during the jury's deliberations." 481 F.2d 468, 472.

2. In *Hayutin,* the court remarked:

"The provision of Rule 24(c) that an alternate juror who does not replace a regular juror 'shall be discharged after the jury retires to consider its verdict' is a mandatory requirement

. . .

"In the face of the mandatory requirement of Rule 24(c) and the Committee's failure at the time of its adoption to include a proposal to permit an alternate juror to replace a regular juror during their deliberations, it is difficult to understand what purpose is to be served by retaining the alternate jurors once the case has been submitted. The reason advanced by the Government in its brief that this procedure presents counsel with the choice of consenting to a substitution if one of the regular jurors became disqualified 'prior to the end of jury deliberations' rather than face a retrial or proceed with less than twelve, is no reason in the absence of any rule or statute authorizing such consent. . . . The absence of benefit being so clear and the danger of prejudice so great, it seems foolhardy to depart from the command of Rule 24." 398 F.2d 944, 950.

*sub nom., United States v. Nash,* 414 F.2d 234 (2d Cir.), *cert. denied,* 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969). The unambiguous language of the Rule and the cases interpreting it [3] have impelled one of the Nation's most prestigious legal commentators to conclude that ". . . it is reversible error, even though defendant may have consented, to permit an alternate to stay with the jury after they have retired to deliberate or to substitute an alternate after deliberations have begun." C. Wright, Federal Practice and Procedure § 388, Vol. 2 at p. 52 (1969).[4] In his discussion, Professor Wright criticizes our court's *Leser* decision, discussed *infra.*

■ The Rule is phrased in mandatory terms for what many have thought to be sound reasons.[5] Among such reasons are: The inherent coercive effect upon an alternate juror who joins a jury that

has, as in this case, already agreed that the accused is guilty is · substantial. Moreover, such a procedure significantly limits the accused's right to a mistrial if the original jury cannot reach agreement. A lone juror who could not in good conscience vote for conviction could be under great pressure to feign illness or other incapacity so as to place the burden of decision on an alternate juror.[6]

That impermissible coercion upon the alternate juror in this case was manifestly inherent, and that there was not the conscientious, careful reconsideration by the twelve of the newly constituted jury would seem apparent from the fact that, despite the district judge's instruction to the jury to "begin at the beginning," a jury that had required almost four hours to reach its initial verdict needed, after being reconstituted, only twenty-nine minutes to find the appellant guilty a second time.[7]

**3.** Neither *Allison* nor *Hayutin* held that the violation of Rule 24(c) is, *ipso facto,* such prejudicial error as to necessitate reversal in all circumstances. In both cases the convictions were ultimately affirmed, the court in *Allison* finding that there was "no reasonable possibility" that the Rule 24(c) violation "affected the verdict" (487 F.2d at 339), and the court in *Hayutin* concluding that there was "not a scintilla of evidence that the defendant Leon Nash was prejudiced" by the Rule's infringement (414 F.2d at 236). In both *Allison* and *Hayutin* one or more alternate jurors were not discharged after the jury retired, but it was found that there was no possibility of any prejudice to the defendant in either case because the alternate(s) did not participate in the jury's deliberations in any way. Thus, the defendants in both cases received the careful deliberation of the original twelve-member juries, free of any participation by the alternates. Here, however, the alternate did participate, after having been previously excused. In these circumstances, the distinct probability of prejudice to the accused is a fact that we cannot ignore. When, as here, an alternate juror is permitted to participate in the jury's deliberations after the original jury has retired for deliberations, the violation of the plain prohibition of the Rule is so patently impermissible that the "possibility of prejudice," in the language of *Allison,* is manifest.

**4.** The appellant argues that the juror substitution that occurred here violated Lamb's right to due process of law as guaranteed by the Fifth Amendment. Since the plain language of the Rule was violated, we need not reach any

alleged constitutional issue, and we express no opinion thereon. We do note, as a historical fact only, that a rule permitting substitution of an alternate juror after final submission eventually was withdrawn from a 1941 draft by the original Advisory Committee on Criminal Rules when the Supreme Court inquired whether the Committee had satisfied itself that such a provision would be desirable or constitutional. Orfield, *Trial Jurors in Federal Criminal Cases,* 29 F.R.D. 43, 46 (1962).

**5.** A procedure that would permit substitution of an alternate juror after deliberations have already commenced was rejected by the American Bar Association Project on Minimum Standards for Criminal Justice, in its approved draft of Standards Relating to Trial by Jury. *See* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Jury Trial. (Approved Draft, Section 2.7 at p. 326 (1974).) *See also* Report of the Jury Committee of the Judicial Conference of the United States (March 1973 at 7–8) (disapproving a proposed revision of Rule 24(c) that would retain jurors for possible substitution after deliberations have begun).

**6.** *See* C. Wright, Federal Practice and Procedure § 388, Vol. 2, at 53 n. 17 (1969).

**7.** While we have noted the obvious coercive effect suggested by the final deliberative period of only twenty-nine minutes, that is not a factor contributing to our conclusion in this case. The mandatory provision of Rule 24 having been violated, the period of time during which the substitute juror participated in the deliberations is essentially irrelevant.

■ The prosecution argues that we should infer from the record that there had been a stipulation in this case of the type found in *Leser v. United States,* 358 F.2d 313 (9th Cir. 1966), *petition for cert. dismissed,* 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966), wherein we held that, because of the previously expressed stipulation, an alternate juror could be substituted despite Rule 24(c). There is absolutely no basis in the present record for the conclusion that there was such an agreement. The record clearly reveals the defense attorney's vigorous objection to substitution of the alternate juror under conditions that the attorney properly characterized as "a very unusual circumstance and very unforeseeable." We cannot agree with the prosecution, on the authority of a case involving an express stipulation in explicit detail, that defense counsel's failure to object to a routine admonition to an alternate to "stand by" rises to the level of an express agreement to a procedure clearly infringing the unambiguous, mandatory prohibition of Fed.R.Crim.P. 24(c).

■ Moreover, even had there been such a stipulation before the jury retired, we could not hold that such a stipulation would remain effective after dramatic changes of circumstances, including the original jury's arrival at a guilty verdict and the court's telephone call to the alternate juror to advise her that her services would no longer be required because the original jury had reached a verdict. Indeed, it is doubtful, after the court informed the alternate juror she would no longer be needed, that this juror remained as a qualified alternate. In realistic effect her release by the court, even though it developed to be only temporary, relieved her of all obligations of the usual juror, including the obligation of confidentiality. There is no way by which one could ascertain, from the record before us, whether the alternate juror discussed the case with others after she was told not to return because the original jury had reached a verdict, and if so, the scope and extent of any such discussion.

Reversed and remanded.

EUGENE A. WRIGHT, Circuit Judge, with whom TRASK, Circuit Judge, concurs (dissenting):

With due respect to the views of the majority, I must dissent.

## I.

Some additional facts may be helpful in understanding the situation with which the trial court was confronted. In this prosecution for armed bank robbery, the government's case consisted of three eyewitnesses who identified Lamb as the robber and a confession by him to the commission of the offense. The defense consisted of an attempt to raise doubts as to the reliability of the eyewitnesses' identification and the authenticity of the confession. Lamb did not testify.

The jury was duly instructed and the alternate juror was directed to stand ready to be summoned and was charged not to discuss the case meanwhile with any person. The court asked both counsel: "Is the charge satisfactory, gentlemen?" Both responded affirmatively.[1]

---

1. The district court instructed the jury and retained it in the courtroom, and then conversed with the alternate juror as follows:

   "Mrs. Del Toro, I'm going to excuse you now and permit you to go home but I'm going to ask you to stand by.

   "ALTERNATE JUROR NO. 2 (MRS. DEL TORO): And come tomorrow morning?

   "THE COURT: No. We will call you in the morning. The Clerk will call you in the morning if it is necessary for you to come in. Is that agreeable?

   "ALTERNATE JUROR NO. 2: That is agreeable.

   "THE COURT: All right. But please remember the admonition that I have previously given.

   "ALTERNATE JUROR NO. 2: Yes.

   "THE COURT: That you are not to discuss the case with anybody at all.

   "ALTERNATE JUROR NO. 2: Yes.

   "THE COURT: And we will keep you informed if we need you or do not need you. Is that satisfactory?

   "ALTERNATE JUROR NO. 2: Fine.

   "THE COURT: All right. Thank you very kindly.

Thereafter, at 4:09 P.M., the jury retired to deliberate.

The jury recessed at 5:00 P.M. of the same day, and reconvened at 9:30 A.M. the following morning. Between 11:04 A.M. and 11:25 A.M. the trial judge, at the jury's request, reread his instructions. The jury recessed at 11:50 A.M. for the noon meal.

During noon recess the judge received the note from one of the original jurors, as described by the majority. He then telephoned the alternate juror and instructed her to return to court. Shortly thereafter, however, the judge learned that the jury had reached its verdict. He therefore called the alternate again.

After determining that the verdict was improper, and acceding to defense counsel's suggestion that the original juror with the emotional difficulties not be allowed to continue, the judge concluded:

> Well, in view of that I guess we should call Mrs. Del Toro again and tell her to come.

The elapsed time between the notification of the alternate juror not to come back to court, and the subsequent notification to the contrary, was no more than two hours.

> "ALTERNATE JUROR NO. 2: The only thing, it will take time for me to get here.
> "THE COURT: Of course. You live where?
> "ALTERNATE JUROR NO. 2: Monterey Park.
> "THE COURT: Oh, of course. Thank you. Are you employed?
> "ALTERNATE JUROR NO. 2: I'm home. I work nights sometimes so I'm excused for this week.
> "THE COURT: All right. Thank you very kindly.
> (Whereupon, the Alternate Juror was excused.)
> "THE COURT: Is the charge satisfactory, gentlemen?
> "MR. ALLIS: Yes, it is, your Honor.
> "MR. MAYOCK: Yes, your Honor.
> "THE COURT: All right, Miss Corcoran, if you will swear the Bailiffs, please."
> [R.T. 452–53]. Thereafter the jury retired to deliberate.

When it became clear that one of the original jurors, Mrs. Acuna, could not continue the

The court reread the instructions and admonished the newly constituted jury to begin its deliberations anew. In addition, the court, at the prompting of government counsel, made appropriate and significant inquiries after the final verdict was returned. It asked whether the jury had begun deliberations and discussed all points of evidence. The foreman and Mrs. Del Toro both responded affirmatively. The defendant does not argue that this was incorrect or that the jury did not duly follow the court's instructions and admonitions.

## II.

The majority recites a number of factors supporting its decision to reverse. It is unclear to me which, if any, of those factors actually bear on the majority's disposition.

The majority asserts that "impermissible coercion . . . would seem apparent" in that the new jury deliberated only 29 minutes, while the old jury needed nearly four hours. The very language employed demonstrates the majority's lack of conviction. Indeed, by its footnote 7 the majority recognizes the speculativeness of this contention, stating that the "twenty-nine minutes . . is not a factor contributing to our conclusion." This is understandable.

judge proceeded to substitute Mrs. Del Toro. The following colloquy then occurred:

> "THE COURT: Well, is it agreeable to have Mrs. Del Toro appear, Mr. Allis?
> "MR. ALLIS: I am going to at this time move for a mistrial, your Honor, as to the presentation of law on the problem of a juror stepping in at this late date. I can't do it now but I will make every attempt to find out something about it.
> "THE COURT: All right. The motion for a mistrial will be denied, keeping in mind, Mr. Allis, that at the conclusion of the Court's instructions there was an agreement and a stipulation that this procedure was satisfactory to counsel. But you made your motion and your motion for a mistrial is denied.
> "MR. ALLIS: Well, I, of course, would never object to anything that is appropriate. This is a very unusual circumstance and very unforeseeable.
> "THE COURT: All right. Mrs. Acuna, then, you are excused."
> [R.T. 465].

The original jury asked that the instructions be reread and did not deliberate anew until approximately 11:30 A.M., and deliberated again from 1:10 P.M. until 2:13 P.M. It "would seem apparent," then, that serious deliberation time comprised approximately 83 minutes. The difference between 83 and 29 hardly compels a finding of "impermissible coercion."

The majority cites no authority to support its suggestion that the shortness of time in reaching a verdict indicates prejudice. The cases are all to the contrary. *See generally annotation,* 91 A.L.R.2d 1238 (1963). The Sixth Circuit suggests, for example:

> Jurors formulate their opinions from the evidence they hear in the court room. The record of the trial indicates that the issues were simple and the evidence of guilt strong. It is not surprising that the jurors could quickly arrive at a verdict.

*United States v. Young,* 301 F.2d 298, 299 (6th Cir. 1962).

There is certainly nothing unusual in having a jury reach a verdict in 29 minutes when the facts are clearly presented and the evidence is as overwhelming as was the case here. It is pure speculation to suggest that impermissible coercion was exercised over Mrs. Del Toro.

The majority also asserts as a reason for its rule the likelihood that a recalcitrant juror would "feign illness or other incapacity so as to place the burden of decision on an alternate juror." Yet in this case the withdrawing juror had already decided defendant was guilty, and only thereafter asked to be relieved. She was hardly coerced into feigning illness.

The majority also presents as a supportive factor the

> dramatic changes of circumstances, including the original jury's arrival at a guilty verdict and the court's telephone call to the alternate juror to advise her that her services would no

longer be required because the original jury had reached a verdict.

I suggest that the "realistic effect" upon the alternate juror of these confusing telephone calls was absolutely nil. I cannot agree that any of these events served to relieve Mrs. Del Toro, the alternate juror, of any of her obligations, including that of confidentiality. Defendant makes no contention that she discussed the case with outsiders, disregarded the court's admonitions or brought any outside influence into the jury room. There is not one scintilla of evidence suggesting that she did any of these things. On these facts, we might just as well assume that one or more of the original eleven jurors disregarded the judicial admonitions during the previous evening, as that Mrs. Del Toro did so during the period in question.

The only remaining factor bearing on the majority's disposition is the fact that the original jury returned a guilty verdict before the alternate was seated. While concededly this fact suggests the possibility of influence, it is not enough standing alone to justify a rule of reversal *per se.*

### III.

Even if one concludes that Rule 24(c) was not here waived by stipulation (see discussion below to the effect that it was), it is still necessary to determine whether violation of the rule was prejudicial to the defendant. In each of the two cases relied upon by the majority, the appellate courts after finding error, called for findings below of the possibility of prejudice. In each case, the district court on remand found no prejudice and the decision was affirmed on subsequent appeal. *United States v. Allison,* 481 F.2d 468, 472 (5th Cir. 1973), *subsequent appeal,* 487 F.2d 339 (5th Cir. 1973), *cert. denied,* 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974); *United States v. Hayutin,* 398 F.2d 944, 950–51 (2d Cir.), *cert. denied,* 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968), *subsequent appeal sub nom., United States v. Nash,* 414 F.2d 234 (2d Cir.), *cert. denied,*

396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969).[2]

In its footnote 3 the majority seeks to distinguish *Allison* and *Hayutin* with the suggestion that "defendants in both cases received the careful deliberation of the original twelve-member juries, free of any participation by the alternates." However, the presence of an alternate juror in the jury room, as in *Allison,* "destroys the sanctity of the jury." *United States v. Beasley,* 464 F.2d 468, 470 (10th Cir. 1972). The mere presence of the alternate may well have an effect on the deliberations of the twelve. *United States v. Virginia Erection Corp.,* 335 F.2d 868, 872 (4th Cir. 1964).

When an alternate is present in the jury room, thereby violating the privacy of jury deliberations, a problem of constitutional dimension arises. There is thus greater justification for a rule of reversal per se where an alternate is present during deliberations (*see Beasley, supra; Virginia Erection, supra*) than where an alternate is substituted after deliberations have commenced. *See Leser v. United States,* 358 F.2d 313, 318 (9th Cir.), *petition for cert. dismissed,* 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966).

Significantly, the proposed Rule 24(c) (footnote 7 *infra* ) expressly prohibits attendance by alternates during deliberation, but would nevertheless allow substitution as the need arose.

The majority relies upon the "dramatic changes of circumstances" as justifying its rule of reversal *per se.* I suggest if the facts were the same, except that the original jury deliberated 29 minutes, and the new jury four hours, the *per se* rule would be of doubtful applicability.

Therefore, despite the ambiguity of the majority opinion,[3] it most likely holds that on the particular facts before it reversal *per se* is required. Such a holding, of course, presumes juror misconduct in this case.

Rather than to presume misconduct, as would the majority, our role more appropriately is to presume that the jury has complied with the court's instructions and admonitions, absent evidence to the contrary. *Gray v. Shell Oil Co.,* 469 F.2d 742, 752 (9th Cir. 1972), *citing, Vitello v. United States,* 425 F.2d 416, 422–23 (9th Cir. 1970); *Silverthorne v. United States,* 400 F.2d 627, 641 (9th Cir. 1968), *subsequent appeal,* 430 F.2d 675 (9th Cir. 1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971); *United States v. Baca,* 494 F.2d 424, 429 (10th Cir. 1974).

Moreover, the trial court specifically inquired of the newly constituted jury as to the possibility of misconduct, and was satisfied that there was none. We should be loath to overturn this determination. *See, e. g., United States v. Manning,* 509 F.2d 1230, 1233 (9th Cir. 1974). The majority here overturns *sub silentio* the trial court's finding.

If the majority opinion is read as requiring reversal *per se* each time Rule 24(c) is violated, regardless of circumstances, yet another problem arises. In *Leser,* we held that an express waiver of Rule 24(c) is "effective and binding upon appellants." 358 F.2d at 317. The majority herein does not overrule *Leser,* but merely distinguishes it. Future litigants reading together this case and *Leser* must conclude that without an express waiver prejudice is conclusively presumed, but with such a waiver there is a conclusive presumption of lack of prejudice.[4]

---

**2.** In *Hayutin,* 398 F.2d at 950–51, the Second Circuit found insufficient prejudice on the record and affirmed the conviction, but allowed, subsequent fact-finding on the issue. In *Allison,* 481 F.2d at 471, the Fifth Circuit remanded specifically for fact-finding.

**3.** While the last sentence of the majority's footnote 3 suggests a rule of reversal *per se* regardless of the circumstances of the Rule 24(c) violation, that sentence is at odds with the textual reliance upon the "dramatic changes of circumstances" in the instant case.

**4.** Since the majority found there was no stipulation, its subsequent assertion that a stipulation made before the actual point of substitution would be ineffective is dictum. But even if that assertion be regarded as holding, the opposite conclusive presumption problem would still remain in those instances where the presence of an express stipulation at the point of substitution is disputed.

This approach involving opposite conclusive presumptions is awkward at best. The central issue in these cases is whether the violation of Rule 24(c) is prejudicial to the defendant. *See Allison* and *Hayutin, supra.* Because of the myriad factual possibilities in which a Rule 24(c) violation may arise it is most difficult to determine from case to case whether actual, or even apparent, prejudice is present. Yet if the majority disposition is read as a rule of reversal *per se* regardless of circumstances, our exclusive focus in the future will be on the specificity of the waiver, without regard to apparent or actual prejudice or lack thereof. The inappropriateness of this approach is made clear by comparing Part IV of this dissent with the majority opinion (text following footnote 6).

I would adopt the approach of the courts in *Allison* and *Hayutin,* calling for a remand for an evidentiary hearing on the possibility of prejudice. However, in the case before us a remand would be fruitless, since the district court has already engaged in the necessary factfinding on the issue of possible prejudice.

### IV.

Appellant concedes this court has held that Rule 24(c) can be waived in some circumstances. In *Leser,* we held that it was not reversible error to substitute an alternate for a juror who had become ill during deliberations, where counsel had stipulated to the procedure in the presence of and with the implied consent of the defendant. Appellant asserts that in this case, unlike *Leser,* there was no consent by defense counsel nor any acquiescence by defendant in the substitution of the alternate juror.

Yet both counsel had explicitly accepted the court's earlier admonition to the alternate juror, and had failed to object to the court's action in keeping her on call. The question "Is the charge satisfactory, gentlemen?" (see note 1 above) must have referred to the admonition given to Mrs. Del Toro immediately before the court's inquiry of counsel.[5] This

court has regularly referred to admonitions such as that given to Mrs. Del Toro as "instructions." *E. g., Silverthorne v. United States, supra,* 400 F.2d at 643; *Hilliard v. Arizona,* 362 F.2d 908, 909 (9th Cir. 1966). *Compare* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury § 4.6(d) at p. 117 (1968). The word "charge" is of course normally equated with the word "instruction." *See* Black's Law Dictionary 294 (1957). One commentator refers to "the stock *charge* that jurors are not to discuss the case with anyone . . . ." 8 J. Moore, Federal Practice ¶ 30.02 at p. 30–3 (2d ed. 1975) (emphasis added). That defense counsel approved of the admonition or charge is further indicated by his response to the court's later statement (see note 1 above):

> THE COURT: All right. The motion for a mistrial will be denied, keeping in mind, Mr. Allis, that at the conclusion of the Court's instructions there was an agreement and a stipulation that this [alternate juror] procedure was satisfactory to counsel. . .

> MR. ALLIS: [defense counsel]: Well, I of course, would never object to anything that is appropriate. This is a very unusual circumstance and very unforeseeable.

Of equal importance, defense counsel failed to object to the charge given to Mrs. Del Toro. Fed.R.Crim.P. 30 states:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

(While Rule 30 may apply only to instructions to the jury on the law, Rule 51 has approximately the same effect as to other matters raised at trial. *See* 8 J. Moore, *supra,* ¶ 51.02.)

The only significant exception to this rule is the "plain error" doctrine. Fed.R.

---

5. While the court may also have been referring to the jury instructions, this does not negate the direct reference to the admonition given to Mrs. Del Toro.

Crim.P. 52(b). *See Singer v. United States*, 380 U.S. 24, 38, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). Since Rule 24(c) can be waived, *Leser, supra*, defense counsel's failure to demand enforcement of its provisions by objecting to the court's admonitions is hardly "plain error." *See generally* 8 J. Moore, *supra*, ¶ 30.04 at pp. 30–9 to 30–11; 8A *id.* ¶ 51.02.

It is unrealistic to assume that defense counsel approved the admonition, and therefore by strong implication agreed to the alternate standby scheme, but did not thereby waive the "mandatory" second prong of Rule 24(c), which requires discharge of all alternate jurors not installed at the time the jury retires. It is no great leap for me to conclude, as did the district court, that defense counsel and the court contemplated the substitution of the alternate if, as was eventually the case, it later became necessary.[6]

Consequently, even if there was no explicit stipulation of counsel to the substitution plan as such (nowhere is a stipulation indicated in the record), acceptance of the standby procedure constituted acquiescence in the trial court's substitution plan for avoiding mistrial sufficient to confer on the trial court broad discretion in determining fair conditions for putting this plan in effect.

The trial court was not obligated to defer to the defendant's objection to the actual substitution, especially when that objection was not raised until after the originally constituted jury had indicated

its inclinations by its improperly returned verdict. As we held in *Leser*, the substitution process does not of itself deprive a defendant of his right to a full consideration of his case by an impartial jury panel. 358 F.2d at 317–18.

## V.

To me, the authorities on the Rule 24(c) issue are not as one-sided as the majority believes them to be. The Advisory Committee on Rules of Practice and Procedure of the Judicial Conference of the United States has proposed to amend Rule 24(c) to allow alternate juror substitution in situations similar to that facing the trial judge in the case before us.[7] *Compare* Committee on Federal Rules of Civil Procedure Judicial Conference—Ninth Circuit, 37 F.R.D. 71, 74 (1965).

Respected commentators disagreeing with Professor Wright include 8 J. Moore, Federal Practice ¶ 24.05 (2d ed. 1975), and Paisley, *The Federal Rule on Alternate Jurors*, 51 A.B.A.J. 1044 (1965). A California statute similar to the proposed rule of the Judicial Conference of the United States has been sustained against *constitutional* attack. *Cal.Pen.Code* § 1089 (1970), *upheld in People v. Green*, 15 Cal.App.3d 524, 93 Cal.Rptr. 84 (1971). *But cf. People v. Ryan*, 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710 (1966).

For the reasons set forth above, I would affirm the district court.

---

**6.** Indeed, it was defense counsel who invited this procedure by requesting that the original juror not be allowed to continue.

**7.** In relevant part, the proposed draft rule reads as follows:

"(C) Alternate Jurors. . . .

If no waiver [of a 12-person jury verdict] form is executed, the court may direct that not more than 18 jurors may be impaneled. Immediately before the jury retires to deliberate, 12 jurors shall be chosen by lot to constitute the jury, and the remaining jurors shall become alternate jurors. Alternate jurors shall not be present at the deliberations of the jury, but such number as the court shall, in its discretion, decide to be necessary

shall be retained and not discharged while the jury is deliberating. If a regular juror becomes or is found to be unable or disqualified to perform his duties and is replaced, an alternate juror chosen by lot as then needed shall replace the regular juror and may then participate in the deliberations and vote. Before the alternate juror commences his deliberations, the court shall advise the entire jury that all facts shall be reviewed and discussed with the juror who has previously served as an alternate juror. . . ."

Committee on Rules of Practice & Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, at 8 (U.S.G.P.O., Jan., 1973).