6 P.3d 310

**STATE of Arizona, Appellee,**

v.

**Alphonso Rodriguez MARTINEZ,**
**Appellant.**

**No. 1 CA–CR 99–0293.**

Court of Appeals of Arizona, Division 1, Department D.

June 8, 2000.

Review Denied Oct. 31, 2000.

Janet Napolitano, Attorney General, by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Greg McCarthy, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

PATTERSON, Judge.

¶1 Alphonso Rodriguez Martinez (Defendant) appeals from his convictions for child molestation, aggravated assault, and sexual conduct with a minor. Defendant's appeal concerns Rule 18.5(h), Arizona Rules of Criminal Procedure, which permits the substitution of an alternate juror when a deliberating juror is excused due to inability to perform, or disqualification from, his or her required duties. For the reasons that follow, we affirm.

## FACTS AND BACKGROUND

¶2 After trial testimony, the jury in this case retired to deliberate on March 11, 1999, at 1:54 p.m. The jurors deliberated for less than three hours that afternoon. They resumed deliberations at 9:05 a.m. the next day.

¶3 At 9:36 a.m., after receiving a note indicating that Juror 4 wished to speak with the court about alleged juror misconduct during deliberations, the trial judge and counsel for both parties met in chambers with Juror 4. Juror 4 informed the judge that she had observed Juror 2 speaking with two other jurors outside the jury room the previous afternoon. She overheard Juror 2 say, "[T]hey do these things because they want the attention of their fathers." Juror 4 also informed the trial judge that, while walking into the courthouse that morning, she again observed Juror 2 speaking with two other jurors. When Juror 4 approached, she heard Juror 2 talking about a newspaper article concerning two girls who had fabricated a molestation story. She then heard Juror 2 state, "[S]ee, little girls lie."

¶4 The trial judge and counsel then met separately with Juror 2, as well as Jurors 7 and 14, two of the other jurors to whom Juror 2 had spoken. Following these discussions with the three jurors, the judge informed counsel that Juror 2 and 14 had violated Arizona Revised Statutes Annotated (A.R.S.) section 13–2808(A)(1) (1989) by engaging in "unauthorized communications" and Rule 24.1(c)(3)(i), Arizona Rules of Criminal Procedure, by receiving evidence not admitted at trial. The judge informed counsel that he intended to discharge both jurors.

¶5 The court then turned to the matter of recalling the alternate jurors. Before deliberations began, and by agreement with the parties, the trial judge had specifically selected Jurors 8 and 10 to serve as alternates because both jurors had expressed concern during the trial about prior contacts with Defendant's mother.[1] The judge informed counsel that he would take a recess to permit defense counsel to discuss with his client the possibility of the alternate jurors being brought back to deliberate. The trial judge also told counsel that, following the recess,

---

1. Specifically, during a break in voir dire, Juror 8 gave Defendant's mother some Tylenol for a headache and the two had a conversation concerning the mother's husband's health. Juror 8 explained that she had assumed that the woman was a prospective juror, like herself. Juror 8 also assured the trial judge that her conversation with Defendant's mother did not affect the juror's ability to be fair and impartial.

After Defendant's mother testified, Juror 10 informed the court that she believed that she had worked at a grocery store with the mother. With Juror 10 present, however, the trial judge confirmed with Defendant's mother that she had neither worked nor shopped at the grocery store which employed Juror 10. Juror 10 informed the court that her mistaken belief that she had previously met Defendant's mother would not affect her ability to be fair and impartial or predetermine her opinion regarding the credibility of the mother's testimony at trial.

he would assemble all of the jurors in the courtroom and admonish them to cease deliberations until instructed otherwise.

¶ 6 Within ten minutes of calling the recess, however, the trial judge received word that the jurors had reached their verdicts. Over defense counsel's objection, the judge concluded that he would seal the verdicts, dismiss Jurors 2 and 14 outside the presence of the other jurors, recall Jurors 8 and 10, and instruct the reconstituted jury to begin deliberations anew.

¶ 7 After confirming that Jurors 8 and 10 had not discussed the case with anyone since leaving the courthouse the previous day, the trial judge informed the remaining jurors that he had dismissed Jurors 2 and 14 and had recalled Jurors 8 and 10 to engage in deliberations. He then admonished the jurors about their obligation to start deliberations over:

What's happening is that I am going to ask you folks to begin again right from the very, very beginning, and I am sorry to do this in asking for time of you, but it's required. I am asking you to begin the deliberations again all 12 of you. When you get into the jury room your jury deliberations will start anew. Again, let me remind you of the admonishment. If you do take a break during the afternoon or any other time or if you break for the afternoon and come back Monday or Tuesday, that you not discuss the case amongst yourselves or in groups of one's or two's or whatever. The only time when it is appropriate for you to be talking about the case is when you are all together in the jury room, all 12 of you. So, apparently there was a verdict or verdict forms signed. None of us here in the courtroom know what those verdicts were. And so I am going to ask you please be very careful not to mention to the two new jurors that there were verdicts reached, whatever they were or if there were verdicts reached. You are not to discuss the prior verdicts. Any prior decisions that you folks made as jurors, you are not to discuss any prior votes, and I don't know exactly how you got in there and what you did. But if there were votes made, decisions

made and verdicts rendered, you are not to discuss that with the two alternate jurors. We are starting from fresh. We are starting all over again at the very beginning as though no deliberations had occurred at all. Just as if you are leaving right now from the courtroom with me instructing you to go to the jury room to begin deliberations. So, obviously you will choose a presiding juror and then proceed along whatever fashion that you need with full and detailed discussion about all issues as though no verdict had previously been reached.

¶ 8 The reconstituted jury began its deliberations at 1:28 p.m. It returned with its verdicts at 3:58 p.m., convicting Defendant on all counts. The court then reviewed the verdicts reached by the original jury. It too had convicted Defendant on all counts.

## DISCUSSION

¶ 9 On appeal, Defendant argues that the verdicts of the reconstituted jury were "legally invalid" because the trial judge had no authority to assign an alternate juror to a jury that had already reached its verdict. He relies on the language of Rule 18.5(h), Arizona Rules of Criminal Procedure, to support his argument. Rule 18.5(h) reads in relevant part:

In the event a *deliberating* juror is excused due to inability or disqualification to perform required duties, the court may substitute an alternate juror, choosing from among the alternates in the order previously designated, unless disqualified, to join in the *deliberations*. If an alternate joins the *deliberations*, the jury shall be instructed to begin deliberations anew.

(Emphasis added). Defendant claims that, because Rule 18.5(h) refers only to replacing a *deliberating* juror and authorizes the court to appoint an alternate to join *deliberations*, the plain language of the rule precludes the court from altering the makeup of the jury after it has reached its verdict. Defendant therefore asserts that he is entitled to a new

trial.[2]

¶ 10 We agree with Defendant that Rule 18.5 would not permit a trial judge to replace a dismissed juror with an alternate juror after jury deliberations have ended. We disagree with Defendant, however, in his conclusion that the deliberations in this case had ended before Jurors 2 and 14 were dismissed and replaced with Jurors 8 and 10.

¶ 11 In this case, the court refused to accept the verdicts of the original jury. "An attempt by a jury to return a verdict that is not accepted by the trial judge is not a verdict. A verdict is not binding until the court accepts it and the jury is discharged." *State v. Peters*, 855 S.W.2d 345, 349–50 (Mo. 1993) (en banc). Jurors are not discharged from deliberations until: (1) the verdict is recorded; (2) the court determines that the jurors are unable to agree upon a verdict; or (3) a necessity exists for their discharge. *See* Ariz. R.Crim. P. 22.5. None of these three events occurred in this case. The court therefore would have had the authority to order the jury to continue deliberations. *See* Ariz. R.Crim. P. 23.4; *State v. Cipriano*, 24 Ariz.App. 478, 479, 539 P.2d 952, 953 (1975). The trial judge also had the authority, as occurred in this case, to order the jury to begin deliberations anew. *See* Ariz. R.Crim. P. 18.5(h); *State v. Guytan*, 192 Ariz. 514, 521, ¶ 21, 968 P.2d 587, 594 (App. 1998).

¶ 12 Defendant notes in his opening brief that "it appears that there has never been a single case in this country where an alternate has been brought in to deliberate on a count that has already been decided." However, our research has revealed one such case. *See United States v. Lamb*, 529 F.2d 1153 (9th Cir.1975) (en banc). In *Lamb*, a jury deliberated almost four hours over a two-day period before returning a guilty verdict. *See*

*id.* at 1155. The district court refused to accept the verdict, however, because it believed that it was inconsistent with the court's instructions. *See id.* After the court directed the jury to resume deliberations, a juror sent the court a note indicating that "due to the sudden accidental death of one of my close co-workers ... I feel emotionally unable to come to a decision." *Id.* The court, over defense objection, excused that juror and recalled an alternate juror. *See id.* The court told the jury to begin deliberations anew, and the jury returned a guilty verdict in twenty-nine minutes. *See id.* The Ninth Circuit Court of Appeals reversed because the trial court's substitution of the juror with an alternate, absent the defendant's express stipulation of assent, violated the mandatory provisions of Rule 24(c), Federal Rules of Criminal Procedure. *See id.* at 1157.

¶ 13 Prior to December 1, 1999, federal trial courts were required to discharge alternate jurors upon the commencement of deliberations. *See* Fed.R.Crim.P. 24(c). Thus, according to Rule 24(c), alternate jurors could replace dismissed jurors only prior to the time the jury retired to deliberate. *See id.* If it was necessary for the court to excuse a juror for just cause after the jury had retired to consider its verdict, the only remedy for the court was to direct the remaining jurors to return a verdict. *See id.* Effective December 1, 1999, however, the federal rules were amended and now reflect a rule similar to Arizona. *See* Fed.R.Crim.P. 24(c)(3) (amended Apr. 29, 1999) (empowers court to retain alternates after deliberations begin and to replace a dismissed juror with an alternate during deliberations).

¶ 14 The federal procedural rule at issue in *Lamb*, however, differs considerably from Arizona's rule. Arizona courts may substitute an alternate juror for a "deliberating juror" who "is excused due to inability or

---

**2.** In his brief, Defendant states that "[i]t is arguable that a number of errors were committed" by the trial court in substituting Jurors 8 and 10 for Jurors 2 and 14. He suggests that the two alternates should have been disqualified to serve because they were specifically selected as alternates after informing the court about contact, both real and imagined, with Defendant's mother. He also suggests that the alternates should have been disqualified to serve because they had the opportunity to violate the court's admonition not to discuss the case after they were physically excused at the commencement of deliberations. Because Defendant does not argue that these alleged irregularities actually constituted error, and the record does not reflect that Jurors 8 and 10 violated the admonition or should have been disqualified, *we need not address these unsupported assertions.*

disqualification to perform required duties." Ariz. R.Crim. P. 18.5(h). We find *Lamb* relevant, however, because it chooses not to discuss the implications of the original jury having already reached a verdict. Implicit in *Lamb* is the court's understanding that, until a jury reaches a verdict that is accepted by the court, the jury is still "deliberating." To that extent, *Lamb* is consistent with our holding here.

¶ 15 Our review of the record reveals that the trial judge in this case scrupulously adhered to the provisions of Rule 18.5(h) in selecting the jury and making substitutions. Fourteen jurors were properly impaneled. Two jurors were selected as alternates and instructed to continue to observe the admonition. When Jurors 2 and 14 were disqualified, the trial judge exercised his ability to substitute alternate jurors and then correctly instructed the reconstituted jury to begin deliberations anew. Admittedly, Jurors 8 and 10 were not selected as alternates "by lot," as Rule 18.5(h) requires. However, technical errors in jury selection do not always require a new trial. *See State v. Blackhoop,* 158 Ariz. 472, 475, 763 P.2d 536, 539 (App.1988). Here, Juror 8's and Juror 10's initial designation as alternates was the product of the court being acutely sensitive to the Defendant's right to a fair and impartial jury rather than a result of the jurors' inability to serve. Accordingly, we do not find the technical error in the alternates' selection serious enough to warrant a new trial.

¶ 16 Based on the unexpected circumstances produced by the jury during deliberations in this case, the trial judge did a commendable job of protecting the interests of the parties. When informed of the possible taint injected by Juror 2's conversations and comments outside of the jury room, the trial judge identified all of the jurors affected and spoke to each of them individually. During this process, the trial judge involved both parties' counsel and allowed the attorneys to participate fully. The trial judge also had enough foresight to place all of the pertinent interactions on the record by ensuring that a court reporter was present for these discussions.

¶ 17 Most importantly, because the selected alternates were never disqualified, the trial judge did not err in re calling them both to join in the deliberations. Although defense counsel objected to the alternate jurors being recalled, the trial judge sufficiently rehabilitated Jurors 8 and 10. Specifically, both jurors pledged fairness and impartiality, as well as assured the judge that they had not violated the admonition. Therefore, Defendant's assertions that the court erred in the process of replacing the discharged jurors are unpersuasive.

¶ 18 We note that both the original and reconstituted jury took approximately equal amounts of time in re aching verdicts. Similar deliberation times demonstrate that the reconstituted jury adhered to the trial judge's instruction to "start anew," to "not ... discuss the prior verdicts," and to begin "all over again at the very beginning ... with full and detailed discussion about all issues as though no verdict had previously been reached."

## CONCLUSION

¶ 19 The jury in this case had not been discharged and was therefore still a deliberating jury when the court discharged Jurors 2 and 14. In light of this fact, Rule 18.5(h) permitted the court to recall the two alternates and order that deliberations begin anew. Accordingly, we find no error and affirm Defendant's convictions and sentences.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and SHELDON H. WEISBERG, Judge.