**UNITED STATES of America, Plaintiff,**

v.

**George BARONE, William Boyle, Isom Clemon, Fred R. Field, Jr., Dorothy O. Kopituk, Raymond C. Kopituk, Oscar Morales, Cleveland Turner, James Vanderwyde, and Landon L. Williams, Defendants.**

No. 78–185–CR–WMH.

United States District Court,
S. D. Florida,
Miami Division.

Aug. 28, 1979.

---

9. *See Black v. Acme Markets, Inc.*, 564 F.2d 681, 696 n.3 (5th Cir. 1977).

John F. Evans, S. Michael Levin, Alexander S. White, U. S. Dept. of Justice, Southeastern Regional Strike Force, Miami, Fla., for plaintiff.

E. David Rosen, Miami, Fla., for defendant Barone.

Michael A. Masin, Miami, Fla., for defendant Boyle.

James W. Matthews, Miami, Fla., for defendant Clemon.

Max B. Kogen, Miami, Fla., for defendant Field.

Karl J. Leib, Jr., Miami, Fla., for defendants Dorothy and Raymond Kopituk and Morales.

Michael H. Tarkoff, Miami, Fla., for defendant Turner.

Joseph Varon, Hollywood, Fla., for defendant Vanderwyde.

Lacy Mahon, Jacksonville, Fla., for defendant Williams.

## ORDER REPLACING JUROR

HOEVELER, District Judge.

The issue of juror replacement came before the Court as a result of the illness of Juror Dorothy Loescher subsequent to the beginning of deliberations. Because of the unusual circumstances involved, I feel that a full development of the basis for this order replacing Juror Dorothy Loescher with an alternate is indicated.

This case began on January 29, 1979. Because of attendant publicity and the expected length of the case, a bifurcated and detailed jury selection process was undertaken. Eight days were expended in selecting twelve regular and six alternate jurors. Thereafter, a "James" hearing was conducted in an effort to follow the direction of *U. S. v. James, et al.,* 590 F.2d 575 (5th Cir. 1979). Because of the number of defendants charged with conspiracy and the volume of evidence, this procedure consumed between five and six days.

In the ensuing months of trial, a multitude of witnesses were presented and over a thousand exhibits were received in evidence. Legal arguments spawned by a variety of objections made by both sides consumed, considered in sum, many days. Closing arguments started after approximately six months of trial, lasted for six days during which the positions of the government and the ten remaining defendants were developed. All jurors, including the alternates, heard the entirety of the evidence and arguments.

The jury was instructed as to the law on August 11, 1979 but deliberation was postponed until August 13th. The entire jury including the two alternates had been sequestered as of Wednesday, August 8th (during closing arguments), but immediately after instructions on the law, the alternates were separated from the regular jury. On Friday, August 17th, the jury forewoman asked for an early recess because of the condition of Juror Loescher. Over the weekend recess, her condition apparently became worse and on Monday, August 20th, the forewoman requested professional help.

Mrs. Loescher was examined on August 20th and was removed from the jury on August 21st, pursuant to the recommendation (and testimony) of Dr. Bruce Alspach, an experienced and qualified psychiatrist. No party has taken issue with the correctness of the Court's action in removing Juror Loescher.

When the "regular" jury retired to deliberate, the two alternates were removed from its presence and indeed, were removed to a different floor in the hotel in which all jurors were sequestered. The alternates remained separated from the other jurors thereafter. On August 15th, it appearing there were no problems with the deliberating jurors, both alternates were discharged to their homes, but with instructions to avoid any media coverage and to avoid discussing the case with anyone. They were further advised that they might be recalled and that they should be in readiness in the event of any contingency.

When it became apparent that Juror Loescher might have a serious problem, alternate, Therese Ann Evangelist was asked to return to court. She did so and was sequestered pending resolution of Mrs. Loescher's problem. She was, thereafter, examined by me in open court regarding any exposure to media, conversation regarding the case, or the other jurors. She had not been so exposed and stated she could continue to give all parties a fair trial. Subsequent to the examination of alternate juror Evangelist, each of the eleven remaining jurors was individually examined by the Court (with counsel permitted to and in fact submitting questions to the Court) as to whether they could begin deliberations anew and whether, if they had either personally or collectively arrived at opinions or conclusions, they could erase these from their thoughts and begin again giving consideration to what juror Evangelist and all other jurors would offer in deliberation. Each stated, after having been sworn for this particular examination, that he or she could and would begin anew.

On August 21st, after almost seven months this Court was presented with a somewhat unique problem as to the proper and just way to proceed. Eleven fit jurors were prepared to proceed, almost seven months of their lives having been devoted to this effort. A qualified and healthy alternate, who had heard all of the evidence and the arguments was prepared to go forward. In short, in a setting of massive effort on the part of all parties; of a trial presenting complex issues involving many counts, beginning with twenty two and ending with ten defendants (as the result of guilty pleas, severances and one acquittal); where the physical and mental as well as financial strain were considerations, where the Court had twelve qualified and well jurors, willing and prepared to proceed, the question presented was whether to abort the proceedings by mistrial or to permit the twelve jurors to do what they said they could—deliberate fully and without prejudice. My decision was to proceed and on Thursday, August 22nd, alternate juror Evangelist was made a member of the jury, all jurors were reinstructed and they retired to deliberate.

I am mindful of Rule 24(c), F.R.C.P. In the many criminal cases over which this Court has presided in the past two years and three months alternate jurors have uniformly been discharged upon retirement of the principal jury. Certainly, the need for consistent adherence to the rules of procedure cannot be gainsaid. It must be kept in mind, however, that Rule 24(c) is indeed a rule of procedure and that in unusual circumstances it may well be that the demands of essential justice require a Court to rule on substance rather than form, particularly when, as here, there appears to be a clear collision between the two.

Perhaps to suggest a collision begs the proper question as to whether there really is conflict. There has been substantial compliance with the spirit of Rule 24(c). As stated previously, the alternates were isolated from the regular jury and the record is clear that there was no contact and therefore no taint by any alternate. This end would appear to be the principal purpose of the Rule. The main question seems to be

whether an alternate juror who has remained unsullied by outside contact or contact with the other jurors can replace a juror who becomes ill during deliberations.

It is my earnest desire to adhere to the requirements of the approved rules, those procedures which are mandated and the cases of this circuit, but in so doing to accomplish these ends in a manner which achieves essential justice. There are few instances in which a District Judge should attempt innovation as I share the observation that District Judges should apply the law rather than make it. Nonetheless, this case cries out for the careful application of any procedure which can secure a just and non-prejudicial result. Every effort has been made to achieve this.

Rule 24(c), Federal Rules of Criminal Procedure, provides in pertinent part as follows:

> Alternate jurors in the order in which they are called shall replace jurors who, *prior to the time the jury retires to consider its verdict*, become or are found to be unable or disqualified to perform their duties. . . . An alternate juror who does not replace a regular juror *shall be discharged after the jury retires to consider its verdict*. [Emphasis supplied]

The provision, that an alternate who does not replace a regular juror be discharged when the jury retires, has been characterized by our Court of Appeals as "a mandatory requirement that should be scrupulously followed." *U. S. v. Allison*, 481 F.2d 468, 472 (5th Cir. 1973). This Court, like the trial court in *Allison*, has, of course, violated that rule in its literal terms. Yet, despite the mandatory language of the rule, the *Allison* Court rejected the contention of the defendants that any departure from the rule automatically required a new trial. Rather than the per se or automatic application urged, the Court adopted the standard that a new trial would not be required unless there was a "reasonable possibility" that the violation of the rule had resulted in some prejudicial effect on the jury's verdict. The case was, therefore, remanded to the trial court with directions to conduct an evidentiary hearing and make findings and conclusions. The trial judge's finding on remand, that there was no reasonable possibility that the presence of the alternate juror during the deliberations affected the verdict, was subsequently affirmed. *U. S. v. Allison*, 487 F.2d 339 (5th Cir. 1973), *cert. denied*, 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974).

The Second Circuit had earlier considered the same issue raised in *Allison* and reached the same result in the case of *U. S. v. Hayutin*, 398 F.2d 944 (2d Cir. 1968), *cert. denied*, 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968), *subsequent appeal sub nom., U. S. v. Nash*, 414 F.2d 234 (2d Cir. 1969), *cert. denied*, 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969). In that case, the trial court had refused defendant's request to discharge the three remaining jurors after the jury had retired to consider its verdict. Unlike the situation in *Allison*, the retained alternates had not retired with the regular jurors to the jury room but had been kept separated. Although the command of Rule 24 had not been observed, there was no indication of any contact between the alternates and the regular jurors. Thus, no prejudice had resulted to the defendant when there was no "risk of having his guilt determined by the three alternates in addition to the regular jurors." *Hayutin, supra*, at p. 950; *Nash, supra*, at p. 236.

*Allison*, of course, is factually distinguishable from the instant situation, as there the alternate juror retired with the other twelve to the jury room and remained there during part of the deliberations. In our case, the alternates had been segregated from the original twelve, and at no time have there been more than twelve jurors in the jury room during deliberations. The replacement of a disabled juror with an alternate will not result in the possibility, raised in *Allison*, of an extra juror participating in the deliberations or improperly taking part in any votes of the jury. Nor is there the possibility that the mere presence of an alternate restrained any of the regular jurors in expressing his views or in exercising his independence of thought and

action. After the installation of the alternate as a member of this jury, her presence, participation, and influence will be an integral part of the proceedings, rather than a source of potential outside influence or contamination.

As in *Nash, supra,* (and as pointed out above), this alternate has been kept away from the original jurors. The record will show that there is absolutely no evidence that "any communications or conversations took place between the regular jury and the alternates." *Id.* at p. 235. In fact, all of the evidence, including the testimony of the jurors themselves, shows conclusively that there has been, not only no "prejudicial" or "impermissible" contact, but no contact whatsoever of any kind between this alternate and the original jury.

The technical violation of the rule, which occurred when the Court failed to discharge the alternates upon the retiring of the jury, has thus resulted in no prejudice to any defendant. The Court is not concerned, however, with the question of extra jurors in the jury room (*Allison*) nor with the question of possible influence on the twelve by a retained alternate not physically present during the deliberative process (*Hayutin, Nash*). Again, the issue is the propriety of substituting an alternate to make up the full complement of twelve jurors.

This Court has been unable to find any reported case from the Court of Appeals for the Fifth Circuit or from the Supreme Court of the United States treating the question of substitution of an alternate after the jury has retired and begun the business of deliberating.

There are several cases from other jurisdictions approving such a substitution when all parties have stipulated to the procedure. The theoretical basis of these cases is found in the Supreme Court opinion in *Patton v. U. S.,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930). It was there held that a defendant in a criminal case might waive his right to "trial by a constitutional jury and submit to trial by a jury of less than twelve persons," *id.,* at p. 312, 50 S.Ct. at p. 263, provided there was consent of government counsel and the sanction of the court, in addition to the express and intelligent consent of the defendant.

Relying on the *Patton* criteria for effective waiver of constitutional jury rights, the Tenth Circuit, in *U. S. v. Baccari,* 489 F.2d 274 (10th Cir. 1973), *cert. denied,* 417 U.S. 914, 94 S.Ct. 2614, 41 L.Ed.2d 218 (1974), expressed its approval of a stipulation by the parties to replace an ill juror with an alternate after deliberations had begun.

The Ninth Circuit had also approved such a stipulation in the case of *Leser v. U. S.,* 358 F.2d 313 (9th Cir. 1966), *cert. dismissed,* 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966). In that case, defense counsel had expressly consented and stipulated to the replacement of an ailing juror after deliberations began. Defendants contended on appeal that the stipulation by counsel was ineffective without defendants' *specific* assent thereto. In rejecting this argument, the Court found that appellants had "knowingly and intelligently acquiesced in the voluntary stipulation of their counsel," and thus, the stipulation effectively bound the defendants. *Id.,* at p. 317.

*Leser* was later cited by the dissenters in *U. S. v. Lamb,* 529 F.2d 1153, 1162 (9th Cir. 1975) as holding that "the substitution process does not of itself deprive a defendant of his right to a full consideration of his case by an impartial jury panel."

Stipulations as to retaining an alternate beyond the time indicated by the rule, rather than substituting an alternate, have also been dealt with by various Courts. In *U. S. v. Virginia Erection Corp.,* 335 F.2d 868 (4th Cir. 1964), defendants' convictions were reversed because of a violation of Rule 24(c), even though the defendants had agreed to the very procedure violative of the rule. The violation there consisted in the trial court's having allowed (with the agreement of counsel for both sides) an alternate juror to retire with the jury and remain there during deliberations. Although the alternate was admonished not to participate and to say nothing unless one of the regular jurors should become ill or "disqualified,"

the alternate had been present with the twelve regular jurors throughout the deliberations. Three reasons were given for the Court's disapproval of the procedure employed. First, it would seem that the trial judge, in ordering the alternate not to participate unless the regular juror became ill, had left open the question of who was to make that decision—perhaps the alternate himself, the ailing juror, the eleven others, or all of them. Second, even if the alternate had followed the Court's instructions in remaining silent during the deliberations (a fact not revealed by the record), his attitude, as conveyed by facial expression, gestures, or the like, may have been transmitted to the other jurors and had some effect on one or more of them. Third, the alternate's mere presence in the jury room violated the cardinal principle that the deliberations of the jury shall remain private and secret. And his presence may have operated to some extent as a restraint upon the jurors in their freedom of action and expression.

Contrast with that case the Fifth Circuit's approach in *U. S. v. Allison, supra.* That Court found *Virginia Erection* distinguishable, and remanded for a determination as to possible prejudice flowing from the fact that the alternate, by agreement, was allowed to sit in on the deliberations.

The Fifth Circuit has also approved in a civil case an agreement by counsel that an alternate go with the other jurors into the jury room without participation in the deliberations unless and until the regular juror was excused. *La-Tex Supply Co. v. Fruehauf Trailer Division*, 444 F.2d 1366 (5th Cir. 1971), *cert. denied*, 404 U.S. 942, 92 S.Ct. 287, 30 L.Ed.2d 256 (1971). Although it appeared in that case that the alternate had disregarded the court's instructions not to participate, by making at least one remark, the Court found that no prejudicial error had occurred.

The defendants in the instant case have, however, unanimously objected both to the Court's failure to discharge the alternates on August 11 and to the replacement of Mrs. Loescher with Mrs. Evangelist. The

above cases dealing with stipulations to these procedures are instructive only insofar as they deal with the reason underlying the rule.

The leading case on substitution of an alternate juror after deliberations have begun (absent some stipulation of defense counsel) is *U. S. v. Lamb*, 529 F.2d 1153 (9th Cir. 1975). In that case, the Court instructed the jury of twelve and then told an alternate to "stand by" in case she was needed. After retiring, one of the jurors sent the judge a note stating that she felt emotionally unable to come to a decision. The judge then called the alternate and asked her to return to court. When he was later informed that the jury had, in fact, reached a verdict, he called the alternate back and told her not to return. The verdict of guilty tendered by the first jury was not accepted by the Court because it was inconsistent with the instructions; and it was at that point that the note-writing juror was excused and the alternate substituted. The jury was then reinstructed and told to begin their deliberations anew. After only 29 minutes of deliberation (as contrasted with four hours of deliberation the first time), the newly constituted jury returned a second guilty verdict.

After discussing the mandatory nature of Rule 24(c), the Ninth Circuit, *en banc*, listed some of the "sound reasons" underlying the rule. Among them were the inherent coercive effect upon an alternate who joins a jury that has already agreed that the accused is guilty and the possibility that a lone juror who would not vote for conviction would be under great pressure to feign illness or other incapacity so as to place the burden of decision on an alternate juror. It was apparent to the appellate court, from the fact that the second verdict had required only 29 minutes to reach, both that the alternate had been impermissibly coerced and also that the jury had not given the conscientious, careful reconsideration ordered by the judge in his instruction to "begin at the beginning." *Id.*, at p. 1156.

In that case, the defense attorney had vigorously objected to the substitution.

Even had he so stipulated, however, the Court indicated that it was doubtful that such a stipulation would remain effective after the "dramatic changes of circumstances" above outlined. Furthermore, because the court had released the alternate, she may have no longer remained a qualified juror, the release having relieved her of the obligations of the usual juror, including the obligation of confidentiality, and the record being devoid of any indication of whether she had discussed the case with others after her release.

*Lamb* is, of course, not binding on this Court. Even if it were, the peculiar facts of that case are clearly distinguishable from the case at bar. Further, the reasons given in support of the rule in *Lamb* simply do not apply here. This Court has taken great pains to negate any possible "coercive effect" on the substituted juror. Each and every one of the eleven jurors was questioned exhaustively as to his or her willingness to begin deliberations anew, giving due consideration to the views of the others, including those of their new member. Without exception, each juror indicated not only that he or she *could* do that, but also that he or she *would* do that. Thus, the danger of prejudice so obvious to the *Lamb* Court is totally lacking in this case. In addition, there is no possibility that Mrs. Evangelist is not now a qualified juror. She was not released from the usual obligations of a juror. Quite the contrary, she was expressly instructed when the jury retired on August 11th to avoid all media coverage of the case and all discussion of the case with third parties. When she was called back, she was questioned on two separate occasions, and she stated in no uncertain terms that she had faithfully adhered to those instructions. A well reasoned dissent is also instructive on the question.

Exhaustive research has revealed only one federal case other than *Lamb* apparently treating the issue of replacement of a

disqualified juror after deliberations have begun, absent a stipulation of the parties. In *Champagne v. U. S.* (petition for cert. filed May 26, 1978, noted at 47 USLW 3173, *cert. denied*, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 422), defendant's conviction was affirmed by the Second Circuit without written opinion. An opinion or further detail on the circumstances of the case is unavailable at this writing; but it would appear from the notation at 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 422 that the trial court had denied defendant's motion for mistrial and allowed an alternate juror to be substituted for a member of the original panel after the jury had retired. Whether this was an issue upon which the Court of Appeals based its affirmance of his convictions is not entirely clear.

Because neither the Court of Appeals for the Fifth Circuit nor the Supreme Court of the United States has yet decided (insofar as this Court is aware) a case presenting this exact issue, this Court has looked elsewhere for guidance. The case that, in the opinion of this Court, is most persuasive is *People v. Collins*, 17 Cal.3d 687, 131 Cal. Rptr. 782, 552 P.2d 742 (1976), *cert. denied*, 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977). After the jury there had begun its deliberations, an alternate was substituted for one of the original jurors. Defendant appealed from the judgment of conviction, contending, *inter alia*, that the substitution violated his constitutional right to trial by jury.[1]

The trial court there had received a note from one of the jurors requesting to be excused from deliberations because of inability to follow the court's instructions concerning the deliberations. She was questioned by the court, and it developed that the problem was of an emotional nature, stemming from her inability to cope with the experience of being a juror. She was then dismissed, and an alternate juror sub-

1. Although the Court stated that the question was controlled by defendant's right to trial by jury as guaranteed by the California state constitution, the state constitution does not differ fundamentally from the federal constitution in this regard. Consequently, this Court agrees with the California Supreme Court that the result reached satisfied minimum federal constitutional standards. *Id.*, at p. 745, n. 3.

stituted over the objection of defendant and despite his motion for mistrial, which was denied.

The Court held that the substitution of an alternate for an original juror was constitutionally permissible after deliberations have begun, when good cause has been shown and the jury has been instructed to begin its deliberations anew. Noting that substitution of an alternate juror was desirable to maintain judicial efficiency in that it might avoid retrial of lengthy cases, and although a state statute expressly permitted the substitution, the Court deemed it necessary to examine in depth the nature of the defendant's right to trial by jury, which right might be "trenched upon" by substitution of jurors.

That right includes among its essential elements, the requirement that the jury consist of twelve persons and that its verdict be unanimous. These elements are, in turn, part of a broader right which additionally requires each juror to have engaged in all of the jury's deliberations.

The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision making process after the 11 others have commenced deliberations. The elements of number and unanimity combine to form an essential element of unity in the verdict. By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity. *Id.*, at p. 746.

The Court thus rejected the government's contention that substitution of an alternate juror after deliberations have begun does not constitutionally require that deliberations commence anew. More importantly for our purposes, the Court rejected defendant's contention that a mistrial must be declared when a juror is dismissed for good cause after deliberations have begun. "[T]he right to trial by jury does not require a declaration of a mistrial when a properly qualified alternate juror is available and that juror fully participates in all of the deliberations which lead to a verdict." *Id.* Although the trial court had, therefore, erred in failing to instruct the jury to begin its deliberations anew with the substitution, the error was harmless in view of the strength of the case against the defendant.

In a footnote (at p. 747), the California Court reviewed the authorities cited by the defendant which forbid substitution and found them "not persuasive." For example, the case of *People v. Ryan*, 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710 (N.Y. C.A.1966), involved a similar statute in New York which was held unconstitutional on state constitutional grounds, the New York Court of Appeals reasoning that the substituted alternate had not participated in all deliberations which led to the verdict.

Other adverse authorities, such as the *Lamb* case also appear to the California Court to turn on the prejudice inherent when the jury does not begin at the beginning in its deliberations. Professor Wright, for instance, bases his conclusion (that substitution after deliberation begins is reversible error) on the *Ryan* case, *supra*, and on the fact that substitution "would require either that the alternate participate though he has missed part of the jury discussion, or that he sit in with the jury in every case on the chance he might be needed." 2 Wright, Federal Practice and Procedure, § 388, at p. 53.

Further, the ABA Standards Relating to Trial by Jury (1968), standard 2.7, at pp. 78–79, and the commentary thereto, reject an approach allowing substitution after de-

liberations begin on the grounds that it is not desirable to allow a juror who is unfamiliar with the prior deliberations to suddenly join the group and participate in the voting without benefit of the prior group discussion.

All of these authorities have assumed, as a basis for their disapproval of substitution, a fact whose existence is negated by the procedure indicated in *Collins* and followed by this Court. If the jury is instructed to begin anew with its entire process of deliberation and if the substituted alternate participates fully in those deliberations, the fundamental right of the defendant to a unanimous verdict by a jury of twelve is preserved inviolate.

This Court has made great effort to ensure that defendants' rights are protected. As stated by the dissenters in *Lamb, supra*, at p. 1161, "[t]he central issue in these cases is whether the violation of Rule 24(c) is prejudicial to the defendant."

This Circuit has adopted that approach in at least two different kinds of violation of the Rule. In one case, *U. S. v. Cohen*, 530 F.2d 43 (5th Cir. 1976), *cert. denied*, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976), the Court of Appeals affirmed defendant's conviction over his contention that the trial court had violated Rule 24(c) by replacing a "sleeping juror" with an alternate after the jury had been ordered to retire but before deliberations had actually commenced. Rejecting defendant's interpretation as "too formalistic," *id.*, at p. 48, the Court found no violation of the rule.

The other case where our Circuit has rejected a formalistic approach to violation of the rule in favor of one which focuses on prejudice to defendants is, of course, *Allison*. That case involved, as previously indicated, the presence of an alternate in the jury room, rather than the replacement of a disqualified juror with an alternate. It has been said that the mere presence of an alternate juror in the jury room "destroys the sanctity of the jury." *U. S. v. Beasley*, 464 F.2d 468, 470 (10th Cir. 1972). When an alternate is present, thereby violating the privacy of jury deliberations, a problem of

constitutional dimension may arise. Thus, there is "greater justification for a rule of reversal per se where an alternate is present during deliberations [citations omitted] then where an alternate is substituted after deliberations have commenced [citations omitted]." *Lamb, supra*, dissenting opinion, at p. 1160. Significantly, a proposed amendment to the Rule would have expressly prohibited attendance by alternates during deliberations, but would have allowed substitution when necessary. *Id.* If there is room for flexibility in application of the rule to the greater evil contemplated by the presence of an alternate in the jury room, there is surely much to be said for allowing substitution, where no possible outside taint or invasion has occurred.

Lastly, it should be noted that the Report of the Committee on the Operation of the Jury System to the Chief Justice and members of the Judicial Conference, supports an amendment which would authorize the retention of alternate jurors after the deliberations have begun and their subsequent substitution on the jury, if necessary, with the requirement that "all facts shall be reviewed and discussed" with the alternates before deliberations resume. The Committee will recommend such an amendment to permit greater flexibility in the employment of alternate jurors without stipulation and to "remove any doubt as to the propriety of such procedures."

## CONCLUSION

In the absence of any clear and binding precedent on the precise point in issue, this Court has attempted to follow the principle expressed by the Fifth Circuit in *Allison*, at p. 472, that is, to frame relief "which will give due regard to the rights of the [defendants], will likewise accord to the government an opportunity to preserve a fair conviction if no prejudice is shown, and which may thus avoid the necessity of another trial."

That Court also observed that "[b]ecause any benefit to be derived from deviating from the Rule is unclear and the possibility of prejudice so great, it is foolhardy to

depart from the explicit command of Rule 24." *Id.* The dilemma in which this Court has been placed compels the opposite conclusion on these facts. That is, because the benefit to be derived from deviating from the Rule is so great, and the possibility of prejudice unclear (indeed nonexistent), it is, if not foolhardy, inimical to the ends of justice for all concerned *not* to depart from the explicit command of the Rule.

For the foregoing reasons, it is thereby

ORDERED AND ADJUDGED that the alternate juror, Mrs. Therese Ann Evangelist, be substituted for the discharged and disabled juror, Mrs. Dorothy Loescher.