**UNITED STATES of America, Plaintiff,**

v.

**Robert Jay MEINSTER et al.,
Defendants.**

**No. 79–165–Cr–JLK.**

United States District Court,
S. D. Florida.

Jan. 30, 1980.

As Amended April 17, 1980.

Dana Biehl, Sp. Atty., Washington, D. C., for plaintiff.

Dennis J. Cogan, Philadelphia, Pa., for Robert Jay Meinster.

Arnold C. Stream, Monasch, Chazen & Stream, New York City, for Robert Elliot Platshorn.

Rebekah Poston, Miami, Fla., for Eugene Arter Myers.

Samuel Sheres, Hallandale, Fla., for Randall Gene Fisher.

Gerald Kogan, Miami, Fla., for Modesto Echezarreta-Cruz.

Michael Brodsky, Miami, Fla., for Richard Elliot Grant, Jr.

Arthur W. Tifford, Miami, Fla., for Mark Stephen Phillips.

Denis Dean, Miami, Fla., for Carl Jerry London.

ORDER ON REPLACEMENT OF JUROR

JAMES LAWRENCE KING, District Judge.

This matter arose upon the serious illness of juror number six shortly after jury deliberations had begun in this case. With reluctance, the Court concluded in open court that the only reasonable course of action was to replace juror number six with the single qualified alternate juror and to instruct the jury to begin its deliberations anew. In reaching this conclusion, the Court reviewed the same case law and rules of procedure cited by another court in this District when it was confronted by a similar problem just six months ago. *See United States v. Barone*, 83 F.R.D. 565 (S.D.Fla. 1979).

Although the *Barone* decision certainly provides support for the present action in this case, this Court also recognizes that the

question in this case turns on the particular facts here.

The present case is a complex criminal trial. After several weeks of vigorously argued pre-trial motions, trial proceedings began on September 17, 1979 with the commencement of jury selection. Twelve defendants were named in the 36-count, over 100-page indictment which *inter alia* charged various defendants with: (a) joining together in a conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act of 1970 (popularly known as RICO), 18 U.S.C. §§ 1961–68; (b) committing substantive RICO violations; (c) operating a "continuing criminal enterprise" as defined by the Comprehensive Drug Abuse Prevention and Control Act of 1970, as codified at 21 U.S.C. § 848; and (d) joining in a conspiracy to kidnap.

After well over four months of trial, the jury was charged late on January 24, 1980. Originally, twelve jurors and four alternates were selected for jury service. During the course of the trial, one juror was excused for personal reasons, a second juror was excused after evidence was disclosed which indicated that she may have been the target of an alleged jury tampering conspiracy, and a third juror was excused after she inadvertently learned why the second juror had been excused. All of these jurors were replaced by qualified alternates pursuant to Rule 24(c) of the Federal Rules of Criminal Procedure. Thus, at the conclusion of final arguments, the jury panel consisted of twelve regular jurors and a single alternate juror, all of whom had heard all of the evidence, the arguments of counsel, and the Court's instructions.

After the instructions to the jury and out of the presence of the jury, the Court noted the likelihood that jury deliberations might be lengthy in light of the extensive jury instructions, the number of defendants, and the complexity of the crimes alleged in the indictment. Before the jury began its deliberations, the Court sought the help of all counsel in providing for the possibility that during jury deliberations a juror might be unable to continue to serve. All defense counsel refused to stipulate to a jury of less than twelve. All defense counsel objected to a proposal that the alternate juror accompany the other jurors to the jury room and listen to, but not participate in, the deliberations of the jury. Defense counsel persuaded the Court that such a proposal would be unwise.

Defense counsel also objected to the suggestion that the alternate juror might be seated in the event that a regular juror was unable to continue. Over objection, the Court ordered that the single juror be sequestered at the juror's hotel while the other jurors began their deliberations.

The jury began its deliberations on Friday, January 25 at 9:30 a. m. and continued until approximately 4:30 p. m., presumably with a break for lunch. The jury met again the next day, on Saturday, January 26 from 9:30 a. m. until approximately 2:30 p. m., when they requested to return to the hotel because a juror felt ill. They were not to meet again until Monday afternoon, January 28.

On Sunday, juror number six was taken to the hospital with chest pains, a condition which was first diagnosed as angina and which on Monday resulted in a myocardial infarction or, in lay terms, a heart attack. It was quite clear that on the evidence available to the Court, evidence to which all counsel have stipulated, juror number six had to be excused from further service on the jury.

Following the disclosure of these events in open court, all defendants once again rejected the government's proferred waiver of a twelve-person jury. All defense counsel moved for a mistrial and opposed the government's proposal that the alternate juror be seated and that jury deliberations begin anew. The Court's choice was thus narrowed to granting either the defense motions for a mistrial or the government's motion to seat the alternate and begin anew.

The Court has studied Judge Hoeveler's decision in *Barone* and the cases cited therein. There is no need to repeat the exhaustive discussion of legal authority in *Barone*.

Judge Hoeveler noted that the replacement of a juror and the beginning of deliberations anew violated the technical language of Rule 24(c). Turning to the case law, Judge Hoeveler found some support in an unanimous California Supreme Court case, *People v. Collins*, 17 Cal.3d 687, 131 Cal. Rptr. 782, 552 P.2d 742 (1976). He found that there was little federal case law on point, and that the little federal case law extant, though apparently inconsistent with the procedure outlined in *Collins*, was distinguishable. Despite the technical violation of Rule 24(c), Judge Hoeveler ordered the replacement of a juror because of the absence of prejudice to the defendants in that case.

This Court agrees with the decision in *Barone* and would add that this case presents an even stronger case than *Barone* for seating the alternate juror and beginning deliberations anew. In this case, the original jury has deliberated for at most a day and a half whereas in *Barone* deliberations had apparently been conducted by the original jury for the better part of five days. In this case, the alternate juror has been sequestered in his hotel while in *Barone* the juror had returned home for several days. The possibility of prejudice to the defendants is wholly speculative.[1] The complexity of this case matches that in *Barone*. In addition, this trial has presented some of the most difficult management problems that may confront any trial court.

Moreover, this present matter highlights a serious concern of the Court. In recent years, the Congress has enacted a variety of new criminal statutes which attempt to strike at criminal activity that had hitherto been all but immune from prosecution. RICO, RICO conspiracies, and "continuing criminal enterprise[s]" are three of the new breed of complex criminal prosecutions. The Court of Appeals has stated that subsequent to these legislative initiatives "the federal courts, guided by constitutional and legislative dictates, have been responsible for perfecting the weapons in society's arsenal against criminal confederacies." *United States v. Elliott*, 571 F.2d 880, 884 (5th Cir. 1978). If those Federal Rules of Criminal Procedure which are not constitutionally-mandated[1a] are not interpreted with enough flexibility to permit these complex criminal cases to be conducted in some reasonable fashion, then all of such substantive legislation of the Congress may be for naught. Faced with a number of unique situations left in doubt by the Federal Rules of Criminal Procedure,[2] the Court has always sought to interpret the rules in a manner which protects the defendants' constitutional rights while not making criminal prosecutions of this nature unfeasible.[3]

---

1. Indeed, it may reasonably be concluded that the jury had not arrived at any tentative verdicts since it was inadvertently disclosed that none of the verdict forms had been marked in any way.

1a. After the decision to replace the juror in this case, the Court's attention was directed to the recent decision by the Seventh Circuit in *Henderson v. Lane*, 613 F.2d 175 (7th Cir. 1980). In *Henderson* the appeals court panel reviewed the substitution of a juror after the start of deliberations in a state criminal trial when that matter was raised in a habeas corpus petition. The Seventh Circuit affirmed the denial of the habeas corpus petition, concluding that the state court defendant's right to a trial by jury under the Sixth and Fourteenth Amendments had not been violated by the replacement procedure. This recent decision lends further support to the conclusion by this Court and the *Barone* court that a rule absolutely prohibiting the replacement of jurors after deliberations have begun is not constitutionally required.

2. *See, e. g.*, Order on Motion for Release on Bond (December 28, 1979) (Interpreting Rule

46(b)); Order Denying Defendant's Requests to be Absent from Trial (December 4, 1979) (Interpreting Rule 43).

3. Rule 2 of the Federal Rules of Criminal Procedure provides:

These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustified expense and delay.

The Supreme Court has noted that "the Rules are not, and were [never] intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances." *Fallen v. United States*, 378 U.S. 139, 142, 84 S.Ct. 1689, 1691, 12 L.Ed.2d 760 (1964). This approach is certainly the rule in the Fifth Circuit. *See United States v. Mendoza*, 565 F.2d 1285, 1289 (5th Cir. 1978); *United States v. Mendoza*, 581 F.2d 89, 90 (5th Cir. 1978) *(per curiam) (en banc)* (adopting relevant portion of panel decision).

The Court believes that its present interpretation of Rule 23(c) is also such a result.

As was announced orally in court, it is hereby

ORDERED AND ADJUDGED that the single alternate juror in this case be seated in the jury and that the jury begin its deliberations anew, pursuant to the procedures outlined in *United States v. Barone.*

DONE AND ORDERED in chambers at Miami, Florida, this 30th day of January, 1980.