Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the
Clerk of any formal errors in order that corrections may be made before the
bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued February 27, 2006         Decided April 7, 2006

No. 05-3003

UNITED STATES OF AMERICA,
APPELLEE

v.

SEAN GINYARD,
APPELLANT

————

Consolidated with Nos.
05-3004, 05-3025, 05-3035

————

Appeals from the United States District Court
for the District of Columbia
(No. 03cr00473-01)
(No. 03cr00473-02)

————

*Richard K. Gilbert*, appointed by the court, argued the cause
and filed the briefs for appellant.

*David M. Menichetti* argued the cause and filed the briefs

for appellant Kevin Jefferson. *Peter M. Brody* entered an appearance.

*John P. Gidez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Roy W. McLeese, III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: An eleven-member jury found Sean Ginyard and Kevin L. Jefferson guilty of possession with intent to distribute more than 50 grams of cocaine base and distribution of a detectable amount of cocaine base. The principal issue on appeal is whether the district court abused its discretion in dismissing, pursuant to Federal Rule of Criminal Procedure 23(b), the twelfth juror, who was a holdout. Although the United States has conceded error, the court is not bound by that concession on a question of law. *Orloff v. Willoughby*, 345 U.S. 83, 87 (1953). We vacate the judgments of conviction and remand the case for a new trial because the district court failed to conduct an adequate inquiry regarding the holdout juror's continuing availability.

## I.

In a superseding indictment, Ginyard and Jefferson were charged with the unlawful distribution of "a detectable amount" of cocaine base, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possession with intent to distribute more than 50 grams of cocaine base, *id.* §§ 841(a)(1) and (b)(1)(A)(iii). Following the district court's denial of motions by Ginyard and Jefferson for

a mistrial, an eleven-member jury returned guilty verdicts, and the district court sentenced Ginyard to 179 months' imprisonment and Jefferson to 120 months' imprisonment. They appeal, presenting multiple claims of error. We need address only two of their contentions. Only the first, a challenge to the dismissal of the twelfth juror, requires extended discussion.

The circumstances leading to the dismissal of the twelfth juror ("Juror 429") are as follows. Jury deliberations began Friday morning, September 10, 2004. The following Monday, and again on Tuesday, the district court learned that the jury's deliberations were "heated" and that the jury may have become "deadlocked" on one charge.[1] On Wednesday, September 15, the jury sent a note asking "How does the jury deal with *a juror* who has stated that they do not believe the testimony of several witnesses and does not offer reasons based on evidence as to why that testimony is not credible and can be ignored?" (Emphasis added.) At the bottom of the note was written "I was left out of this decision. Jury Number 429." The district court responded by instructing the jury that "[m]embers of the jury must fully discuss in a respectful manner the disputed issues with all jurors and try, if possible, to reach a unanimous view." On the same day, Juror 429 sent a note to the judge, stating

---

[1] On Monday, September 13, Juror 2 was dismissed for reasons not relevant to this appeal and replaced the following day with one of two available alternates. When questioned by the district court about her "feelings about deliberating," Juror 2 remarked that "[i]t is getting heated. And we're not getting anywhere." On Tuesday afternoon, the jury sent its first note to the district court, asking: "If we are deadlocked with fundamental differences on one charge, how should we proceed? Should we discuss other charges?" The district court responded with a note stating "You should proceed, and discuss the other charge. You are free to return a verdict on either charge when you reach a unanimous decision."

"Hardship after Friday 9-17-04."

On Thursday, the district court received three notes from the jury about scheduling problems. Two of the notes involved jurors who said they could not deliberate on Friday, and the district court accommodated them by deciding no deliberations would occur on Friday. The third note was from Juror 429. The district court judge stated Juror 429's note was "harder to decipher," but indicated that "he's not able to continue after Friday because of a job opportunity related to some kind of a rehab program that he is involved in." Although the prosecutor understood Juror 429 to state he was unavailable after Friday, defense counsel read the note to invite the district court to contact his counselor if need be.

The district court inquired whether any counsel would oppose proceeding on Monday with eleven jurors, pursuant to Rule 23(b), noting the time and effort already expended by the jury. Defense counsel objected, and suggested Juror 429 be questioned about his availability and the possibility of working around his schedule. The district court advised counsel that she did not want to speak to the juror's counselor—"[i]t brings too many others in, it complicates matters unduly, it raises a question of tainting because his counselor might say something to him." Shortly thereafter another note from Juror 429 arrived, requesting a response to his earlier note. The district court ordered that Juror 429 be brought to the courtroom in order to determine whether he would be available the following week.

Juror 429 told the district court judge that he was hoping to get a job through a program in which he was enrolled and if he remained in jury deliberations the program might give the job to someone else. The juror advised that he had spoken to his counselor the day before (Wednesday) to inform him about his jury duty, but stated "that do[es]n't mean they're going to hold

the position for me." The juror told the judge that a specific position was being held for him and proceeded to describe it. The judge asked the juror, "[d]o you have any reason to think that if you told your counselor that we were going to deliberate on Monday, that he could manage to hold the job open for you for a couple of days, or do you think that is not a realistic possibility?" The juror's answers included the following statements: "Well, I think if I gave him something concrete to look for, like you said, a couple days, maybe yes . . .", "a couple of days, yes, but anything after that . . .", and finally "I just want to let you know, Judge, I think that they will give me a couple of days, maybe Monday, Tuesday, but I can't expect them to hold it all week or as long as the trial might go." The judge then commented, "I do understand that. I very much know how much people need jobs."

The district court decided to dismiss Juror 429 for "good cause shown" at the end of the day (Thursday). Defense counsel had argued that the juror's responses indicated that he could be available until Monday or Tuesday and that a letter from the district court to the juror's counselor might help the situation. The prosecutor urged, however, that the juror be released rather than pushed in one direction or the other and that the trial should proceed with eleven jurors on Monday. The district court found: first, "there are just too many uncertainties about next week"; second, the juror had said his "cutoff was actually yesterday [Wednesday]," and "that today was pushing it" and he thought that the trial would be over today; third, "[t]here are no guarantees that they would hold the job until Monday and/or Tuesday"; and fourth, that even if the juror were available Monday and Tuesday, allowing him to continue deliberation would "impose[] an artificial deadline and an artificial pressure that is inappropriate."

Early Thursday evening, after the district court told Juror

429 he would be excused at the end of the day, the deputy marshal informed the court that just before 5 p.m. he overheard Juror 429 "screaming that he wanted a note sent out to the judge stating that the jury was hopelessly deadlocked." Just before 5 p.m., there was a knock at the door and Juror 429 handed the marshal a note that stated "We, the jury, are hopelessly deadlocked. The foreman refused to submit. The decision was made at 4:30." The note was signed "429." The district court stated that "we know probably that [Juror 429] is the person who wasn't believing certain police officers." Thereafter, the district court implemented its decision to dismiss the juror. The following Monday, the first day the jury reconvened with only eleven members, it returned guilty verdicts against appellants. The district court subsequently denied defense counsel's renewed motions for a mistrial and motions for a new trial.

## II.

Appellants challenge the dismissal of the twelfth juror on the grounds that it violated their Sixth Amendment right to conviction by a unanimous jury and that the district court abused its discretion in dismissing Juror 429 for "good cause" under Federal Rule of Criminal Procedure 23(b). On appeal, the United States has conceded both propositions and agrees that appellants are entitled to a new trial. "This Court, of course, is not bound to accept the Government's concession that the courts below erred on a question of law." *Orloff*, 345 U.S. at 87; *see Young v. United States*, 315 U.S. 257, 258-59 (1942). Our review of the dismissal of the twelfth juror is for abuse of discretion. *See United States v. Essex*, 734 F.2d 832, 845 (D.C. Cir. 1984); *United States v. Gibson*, 135 F.3d 257, 259 (2d Cir. 1998).

The Sixth Amendment to the United States Constitution guarantees the right to a unanimous jury verdict in federal

criminal cases, *Essex*, 734 F.2d at 841 (citing *Apodaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Louisiana*, 406 U.S. 356 (1972)), and restricts the exercise of Rule 23(b) dismissals. In *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987), the court held Rule 23(b) may not be used to dismiss a juror if there is evidence that the request for dismissal stems from the juror's view that the government's evidence is insufficient to support a verdict. *See id*. at 597; *United States v. Hernandez*, 862 F.2d 17, 23 (2d Cir. 1988). To allow invocation of Rule 23(b) in such a circumstance would violate the defendant's constitutional right to a unanimous verdict because it would permit the government to obtain a conviction without having first persuaded the entire jury of the defendant's guilt. *Brown*, 823 F.2d at 595-96; *United States v. Thomas*, 116 F.3d 606, 620 (2d Cir. 1997).

Contrary to the views of the parties, *Brown*, 823 F.2d 591, does not control the outcome of this appeal. It is true that by the time of his actual dismissal on Thursday evening, "the record evidence disclose[d] a possibility that" Juror 429 believed that "the government [had] failed to present sufficient evidence to support a conviction." *Id*. at 597. But the animating principle expressed throughout *Brown* is that a defendant's Sixth Amendment right is infringed when there is some causal link between a juror's holdout status and the juror's dismissal. *See id*. The juror in *Brown* "requested to be discharged because he believed that the evidence offered at trial was inadequate to support a conviction." *Id*. at 596. *Brown*, then, does not control all situations where evidence of holdout status exists, only those situations where the "request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence." *Id*.; *see United States v. Barone*, 114 F.3d 1284, 1309 (1st Cir. 1997). Were a holdout juror to request dismissal because he was experiencing a heart attack, *Brown* would not prevent a district court from excusing that juror under Rule

23(b) for good cause, even if the record suggested that juror independently had doubts about the sufficiency of the evidence. Similarly, *Brown* is not implicated here because there is no evidence that Juror 429 sought dismissal, or was dismissed, because of his doubts about the government's evidence. On the contrary, the record indicates that his request stemmed entirely from an employment-related need.

Federal Rule of Criminal Procedure 23(b) provides that

> (1) In General. A jury consists of 12 persons unless this rule provides otherwise. (2) Stipulation for a Smaller Jury. At any time before the verdict, the parties may, with the court's approval, stipulate in writing that: (A) the jury may consist of fewer than 12 persons; or (B) a jury of fewer than 12 persons may return a verdict if the court finds it necessary to excuse a juror for good cause after the trial begins. (3) Court Order for a Jury of 11. After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror.

Rule 23 incorporates the "venerable common law tradition" of a twelve-member jury, *United States v. Araujo*, 62 F.3d 930, 933 (7th Cir. 1995), while allowing the district court to reduce that number upon a finding of good cause. A prior version of Rule 23(b) provided that "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." The Advisory Committee's Notes for the 2002 amendments state the changes in language were not intended to reflect a change in substance.

Under Rule 23(b), "when a district court decides, without

the agreement of the parties, to permit an eleven-member jury to deliberate to a verdict, two distinct questions are presented: first, whether the court had [good] cause to excuse the twelfth juror, and second, whether the district court was correct in allowing the bobtailed jury to continue rather than declaring a mistrial." *Araujo*, 62 F.3d at 933. We need address only the first question. Although courts have tended to read the rule broadly to encompass a variety of temporary problems arising during jury deliberations, *see, e.g., United States v. Stratton*, 779 F.2d 820, 831-32 (2d Cir. 1985); *see also Brown*, 823 F.3d at 597,[2] the

---

[2] The Advisory Committee's Notes explain that in amending the rule in 1983 to provide discretion for the district court to dismiss a deliberating juror, the amendment

> addresses a situation which does not occur with great frequency but which, when it does occur, may present a most difficult issue concerning the fair and efficient administration of justice. This situation is that in which, after the jury has retired to consider its verdict and any alternative jurors have been discharged, one of the jurors is seriously incapacitated or otherwise found to be unable to continue service upon the jury. The problem is acute when the trial has been a lengthy one and consequently the remedy of mistrial would necessitate a second expenditure of substantial . . . resources. *See, e.g.*, *United States v. Meinster*, 484 F.Supp. 442 (S.D. Fla.1980), *aff'd sub nom. United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981) (juror had heart attack during deliberations after "well over four months of trial"); *United States v. Barone*, 83 F.R.D. 565 (S.D. Fla. 1979) (juror removed upon recommendation of psychiatrist during deliberations after "approximately six months of trial").

> It is the judgment of the Committee that when a juror is lost during deliberations, especially in circumstances like those in *Barone* and *Meinster*, it is

resolution of this appeal does not require examination of the district court's determination that the loss of a job constituted "good cause" to dismiss a holdout juror. Instead, assuming job loss would constitute good cause for dismissing a holdout juror, we conclude that the district court abused its discretion in dismissing the holdout juror because the record does not support the finding he would lose his job opportunity.

Both the command of the Sixth Amendment and this court's precedent on Rule 23(b) require a searching inquiry in order to determine a juror's continuing availability. Even when a juror is not a holdout, the district court's duty of inquiry extends beyond what might otherwise appear to be reasonable inferences from known facts when uncertainties about the juror's continuing availability persist. In *Essex*, 734 F.2d at 842, where the district court had made no finding that it was necessary to dismiss the juror, this court concluded it was not enough that the district court knew the juror had failed to show up on Monday as ordered the previous Friday; the court held that the district court had a "clear duty to determine the whereabouts of the missing juror and make a finding that there was [good cause] for excusing him." *Id*. at 842. More pertinent, in *United States v. Patterson*, 26 F.3d 1127, 1129 (D.C. Cir. 1994), the court held the district court had abused its discretion by failing to conduct an inquiry into the availability of a 68-year-old juror before excusing her even though the district court knew the juror had suffered severe chest pains overnight and had excused her three hours earlier because her doctor wanted to see her immediately. *Id*. at 1128. The court observed that the district court had made

---

essential that there be available a course of action other than mistrial . . . .

Fed. R. Crim. P. 23 Advisory Committee's Notes to 1993 amendments.

no attempt to learn "the precise circumstances or likely duration of the twelfth juror's absence." *Id*. at 1129; *see Araujo*, 62 F.3d at 935-36.

The presence of a holdout lends heightened significance to the district court's duty of inquiry. Our holding in *Brown,* 823 F.2d 591, may not control the outcome here, but it does inform the nature of the district court's inquiry. Where a juror's request to be excused does not stem from his view of the evidence, the district court, upon having reason to believe the juror is a holdout, has an enhanced duty to determine the precise circumstances of the juror's availability lest the action of the court interfere with a defendant's Sixth Amendment right to a unanimous verdict. The district court retains discretion regarding how to resolve uncertainty about a juror's availability and may not be obliged in every instance to explore all options suggested by the parties or to provide an explanation for each option it chooses not to explore. *See Essex*, 734 F.2d at 845. The district court may not rely on an unexamined state of uncertainty to draw the inference that a juror is no longer available to serve, and a district court faced with a holdout juror must apply even greater effort to resolve uncertainty about the juror's continuing availability because of the Sixth Amendment interests that are implicated by its decision. An inadequate inquiry into the precise nature of the uncertainty about a holdout juror's continuing availability cannot fulfill the duty imposed by Rule 23(b). We note that courts upholding a district court's Rule 23(b) dismissal frequently stress that no evidence indicated the twelfth juror was a holdout. *See, e.g.*, *Barone*, 114 F.3d at 1309; *Stratton*, 779 F.2d at 832; *United States v. Huntress*, 956 F.2d 1309, 1313 (5th Cir. 1992); *cf. United States v. Samet*, 207 F. Supp. 2d 269, 280 (S.D.N.Y. 2002). *But see Perez v. Marshall*, 119 F.3d 1422, 1427 (9th Cir. 1997).

A review of the record indicates that "the precise

circumstances" of Juror 429's unavailability were never determined by the district court. Although "ma[king] [some] attempt to learn the precise circumstances" of the juror's hardship, *Patterson*, 26 F.3d at 1129, the district court's reasons for dismissing Juror 429 rested on unexamined uncertainties about the extent of the juror's continuing availability. It was unclear whether Juror 429 could be available the following week at all, for only a couple of days, or for a longer period of time. This uncertainty depended on whether the juror's job opportunity was at risk if he continued to serve. The district court found that the juror had indicated his deadline was Wednesday. Yet the juror was still deliberating on Thursday and had indicated that he might be able to serve several additional days without losing the job opportunity. The district court found that there were no guarantees that the job would be held. Yet the district court made no attempt to ascertain whether or not this was true. The district court neither continued questioning the juror about the nature of his conversation with the counselor nor requested the juror to get more information on how long his job could be held, despite the fact that the juror's responses appeared to invite the district court to provide him with a tentative deadline so he could confer further with his counselor.

The district court's explanation that it did not wish to involve additional persons reflected an understandable reluctance to complicate the circumstances but it does not address why the juror could not contact the counselor in order to obtain a better understanding of how long his job could be held. Even assuming this explanation would be sufficient where the juror is not a holdout, in light of the juror's holdout status, the district court could not reasonably ignore the fact that the counselor appeared to be the best source for resolving the uncertainty about the juror's continuing availability without jeopardizing his opportunity for a job. Likewise, the district

court could not reasonably fail to explore other options. Defense counsel had suggested that the district court send a letter to the counselor; the district court did not reject this suggestion as an option, but, for reasons not explained, did not pursue it either. Defense counsel also suggested the option of working around the juror's schedule. The district court did not pursue this idea with the juror or explain why it did not.

Finally, the district court's finding that it would not matter if the juror would be available one or two days of the following week because it would be inappropriate to impose an "artificial" deadline on the twelve-member jury did not eliminate the need for further inquiry regarding the holdout juror's job situation. Although a reasonable concern stemming from avoiding inappropriate interference with jury deliberations, as the events of Thursday evening illustrated, this concern did not prevent the district court from deciding to discharge the holdout juror after Thursday's deliberations. The record contains no indication that the remaining jurors believed that Juror 429 would remain after Thursday's deliberations were completed; the district court did not instruct the juror to conceal this information. Yet the district court did not explain how a later deadline would be different or less "artificial" than the more imminent Thursday deadline.

In light of the reasonable options presented to the district court by the juror and defense counsel, and others it might have devised, the district court was obliged to make some further effort to resolve the uncertainty about the risk of loss of the holdout juror's job in order to find "good cause" necessitated the juror's dismissal. Such efforts might involve additional conversations with the juror, *see, e.g.*, *Samet*, 207 F. Supp. 2d at 271-76, in order to clarify the time constraints on the job being held for him or specific inquiries of the juror's counselor by the juror or the district court or its staff in order to determine whether the juror's job could be held for him and whether a letter

from the court or scheduling adjustments would make a difference. Settling upon the nature of such efforts remains within the discretion of the district court. But the district court ended its inquiry too soon to be able to find that the twelfth juror, who was a holdout, would lose the job being held for him if he continued to serve on the jury. Because the record does not support the finding of good cause necessitating dismissal, the district court abused its discretion in dismissing the holdout juror.

Accordingly, we vacate the judgments of conviction and remand the case to the district court for a new trial. In light of the remand, we do not address appellants' other challenges to their convictions, except to note, given the likelihood of a new trial, that any error in admitting prior crimes evidence under Federal Rule of Evidence 404(b) was harmless in light of the overwhelming nature of the government's evidence, which included repeated drug purchases by undercover police officers and expert chemical analyses of the drugs purchased. *See United States v. Crowder*, 141 F.3d 1202, 1209 (D.C. Cir. 1998) (en banc).