[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 18-15167

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EULALIO MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:17-cr-00018-HL-TQL-1

_____

Before ROSENBAUM, LUCK, and ANDERSON, Circuit Judges.

LUCK, Circuit Judge:

Eulalio Martinez appeals his convictions for knowingly possessing methamphetamine with the intent to distribute it and illegally reentering the United States. On appeal, Martinez argues that the district court abused its discretion by dismissing a juror after deliberations began. After careful review, and with the benefit of oral argument, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2017, Martinez was indicted for possession with intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. sections 841(a)(1) and (b)(1)(A)(viii), and illegal reentry into the United States, in violation of 8 U.S.C. section 1326(a). He pleaded not guilty, and the case went to trial.

About an hour into the jury's deliberations, the district court learned that a juror, C.B., was "in tears," "having paroxysm[s] of weeping," and had told the courtroom deputy that she could not "go on with the deliberations." The district court discussed the situation with the parties. It noted that "counsel for both sides and possibly [Martinez] himself would have the right to be present" when it interviewed C.B. But the district court proposed speaking to C.B. privately because, given her emotional state, interviewing her "with a crowd present would be counterproductive."

The parties agreed that the district court should interview C.B. in chambers, but Martinez "ask[ed] that before [the district

court] ma[de] any final decision . . . [it] come back and inform [the parties] generally about the conversation so [they could] be heard at that point." The district court said it would do so. The district court then brought C.B. into chambers:[1]

| | |
|---|---|
| THE COURT: | Come in and have a seat Ms. [C.B.], I'm [the judge] as I assume you know. This is the court reporter and you know [the courtroom deputy]. Tell me what your problem is. |
| THE JUROR: | I can't like—(emotionally upset) |
| THE COURT: | Would you like some water? Take a minute and compose yourself. |
| THE JUROR: | I can't put someone else's life in my decision and I feel as though [Martinez] wasn't guilty and everybody is like— |
| THE COURT: | Wait a minute. I can't understand what you're saying. You've got to compose yourself. Can |

---

[1] The government moved to supplement the record with the audio recording of this conversation to "fully illustrate[]" C.B.'s emotional state. Because C.B.'s emotional state is apparent from the transcript, the government's motion is **DENIED**.

|            |                                              |
|------------|----------------------------------------------|
|            | you stop weeping[?] Where are you from?      |
| THE JUROR: | Eatonton.                                     |
| THE COURT: | Eatonton?                                      |
| THE JUROR: | Yes.                                           |
| THE COURT: | What do you do up there?                        |
| THE JUROR: | I work at [a bank] as the operations and tele-coordinator manager. |
| THE COURT: | Are you married?                               |
| THE JUROR: | No.                                            |
| THE COURT: | You're not married. No children?              |
| THE JUROR: | No.                                            |
| THE COURT: | Have you ever been to court before?           |
| THE JUROR: | No.                                            |
| THE COURT: | You've never been to the state courthouse there in Eatonton? |
| THE JUROR: | Only to vote.                                  |

18-15167             Opinion of the Court                    5

THE COURT:       That's good.  I'm glad you vote. Catch your breath.  Has something frightened you?

THE JUROR:       No.  I just can't be responsible.  I thought I could but I just can't be responsible for someone else's life.  I feel like it's— I have a say so and I just can't make that decision.   I can't about someone else's life.  I thought I could, but when we're all around that table and everyone—I just can't.

THE COURT:       Well, listen, you are able to make decisions in the everyday affairs of your life, are you not?

THE JUROR:       Yes, sir.

THE COURT:       You are not being called on to decide what happens to [Martinez]. You are called on to make decisions about the facts of this case under the evidence that you've heard during the trial.

You know, somebody has got to do it and all citizens are obligated to perform this kind of service. But, you know, if he should be found not guilty why that is not

your fault as an individual, and if he is found guilty that's not your fault as an individual.

If he is found guilty you are not going to be called on to pass sentence on him. I agree with you that it may be an unpleasant process but, you know, from time to time all of us are called on to do things we don't want to do, and I'm sure that is true for you as it is for me.

Ultimately, I'm not going to look you in the eye and say I'm going to force you to do this, but at the same time I am not going to lightly release you from your jury service. But you've got to tell me—now you've calmed down a little bit. Do you think you can go on with this deliberation or not?

THE JUROR:      (Nodding head negatively).

THE COURT:      You do not?

THE JUROR:      No, sir.

THE COURT:      Okay.

The district court asked C.B. to remain in chambers and then told the parties in open court:

> [C.B. was] very upset. I have done what I could to calm her down and to talk with her calmly and hopefully with some sense about her jury service. I have explained to her that the decision of the jury, whatever it may be, is not her personal fault and that all of us are called on from time to time to perform unpleasant duties which may involve things which we find personally repugnant. But at the end of our conversation I'm convinced that she cannot go on with jury service and that if she stays in the jury room we will, at best, have a hung jury. So I propose to excuse her and bring in the first alternate.

The government agreed with the district court's proposal.

Martinez objected, "primarily" because "it ha[d] been approximately [an] hour since the jury went out" and "that[ wa]s just too short of a time." Martinez "ask[ed] the [district c]ourt to instruct [C.B.] to do her best." He argued that, "with the passage of time and generosity of the other jurors[,] she might find a comfortable way to participate." The district court said that it "appreciate[d] [Martinez's] point of view" but "differ[ed] with it" and decided to replace C.B. with an alternate. Neither party raised any further objections.

The district court then brought in the remaining jurors (with the alternate), informed them of C.B.'s excusal, and instructed them to start deliberations anew. About an hour after the

deliberations restarted, the jury returned a verdict convicting Martinez of both charges. The district court sentenced Martinez to 166 months' imprisonment to be followed by five years of supervised release. Martinez timely appealed.

## STANDARD OF REVIEW

We review for abuse of discretion a district court's decision to remove a juror after deliberations have begun. *United States v. Brown*, 996 F.3d 1171, 1182 (11th Cir. 2021) (en banc). "We will reverse the district court only if we find that it discharged the juror without factual support, or for a legally irrelevant reason." *United States v. Register*, 182 F.3d 820, 840 (11th Cir. 1999) (quotation omitted). If the district court "determines as a matter of fact that no substantial possibility exists that the pertinent juror is basing her decision on the sufficiency of the evidence, we will review that finding only for clear error." *United States v. Abbell*, 271 F.3d 1286, 1303 (11th Cir. 2001). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

The government contends that we should review most of the issues on appeal only for plain error because Martinez did not argue them to the district court. But we "need not resolve whether plain error review applies here because, even under the lower abuse-of-discretion standard, the district court did not abuse its

discretion." *United States v. Moore*, 22 F.4th 1258, 1271 n.13 (11th Cir. 2022).

## DISCUSSION

Martinez argues that the district court abused its discretion in four ways:  (1) the district court lacked a legally sufficient basis in the record to remove a juror after deliberations had begun; (2) the district court "did not make the appropriate findings or apply the appropriate standard"; (3) the district court did not allow the parties to participate meaningfully in the decision to dismiss C.B.; and (4) the district court "resolved the issue based on an apparent concern that the jury would deadlock."

Under Federal Rule of Criminal Procedure 23(b)(3), a district court may excuse a juror after deliberations have begun upon a finding of "good cause."[2]  Fed. R. Crim. P. 23(b)(3).  "Good cause" exists, for example, when a juror "refuses to apply the law or to follow the [district] court's instructions."  *See Abbell*, 271 F.3d at 1302.  "Because of the danger that a dissenting juror might be excused under the mistaken view that the juror is engaging in impermissible nullification, . . . a juror should be excused only when no

---

[2]  The rule was amended in 2002 to require "good cause," rather than "just cause," but this amendment did not "change [the] substance" of the rule.  Fed. R. Crim. P. 23 advisory committee's note to 2002 amendments.  So pre-2002 cases analyzing "just cause" are equally applicable.  *See United States v. Ginyard*, 444 F.3d 648, 652–53 (D.C. Cir. 2006) (explaining that the shift from "just cause" to "good cause" was "not intended to reflect a change in substance").

'substantial possibility' exists that she is basing her decision on the sufficiency of the evidence." *Id.*

### The District Court Had a Legally Sufficient Basis in the Record for Its Decision

Martinez asserts that, under the appropriate standard, the record does not support C.B.'s dismissal. The district court found that C.B. "[could not] go on with jury service," and could not deliberate, because of her emotional state. That finding is supported by the record.

"It is well settled that good cause exists to dismiss a juror when that juror refuses to apply the law or to follow the [district] court's instructions" because "[s]uch a juror abdicates [her] constitutional responsibility" and "violates [her] solemn oath." *Brown*, 996 F.3d at 1184 (quotations omitted). Here, C.B. couldn't follow the district court's instructions to deliberate. She was emotionally distraught—"not only weeping" but "having paroxysm[s] of weeping"—and she repeatedly said that she couldn't render any verdict because she couldn't "make that decision" and "be responsible." The district court explained to her that she was only "called on to make decisions about the facts of th[e] case under the evidence that [she] heard during the trial," not to decide what would happen to Martinez. But she still insisted that she couldn't deliberate or render a verdict. After trying (and failing) to calm her down, the district court asked her directly: "Do you think you can go on with this deliberation or not?" She responded, "No."

On this record, we can't say that the district court clearly erred in finding that C.B. was too emotional to follow its instructions to deliberate. *See United States v. Augustin*, 661 F.3d 1105, 1132 (11th Cir. 2011) (affirming the dismissal of a juror who "became upset and began crying" and said she was "really unwilling" to deliberate with the other jurors because she was "making [her]self very ill"); *United States v. Oscar*, 877 F.3d 1270, 1288 (11th Cir. 2017) (affirming the dismissal of a juror who "was too emotional to follow the law" because she "began crying when discussing the prospect of the defendants going to prison"); *see also United States v. Godwin*, 765 F.3d 1306, 1317 (11th Cir. 2014) (noting that "[a] distraught juror is unlikely to be an attentive one").

Against this, Martinez argues that there was a tangible possibility that the district court dismissed C.B. based on the sufficiency of the evidence because she believed Martinez was not guilty. There are two problems with this argument.

First, while C.B. did say that she felt Martinez "wasn't guilty," the record is clear that the district court couldn't understand C.B.'s comment. C.B. made the comment while she was "weeping" uncontrollably, and the district court immediately responded: "Wait a minute. I can't understand what you're saying. You've got to compose yourself. Can you stop weeping[?]" The district court couldn't have dismissed C.B. based on a comment it couldn't hear or understand.

Second, even if the district court had understood C.B.'s comment, there was nothing in the record to suggest that C.B. based

her decision on the sufficiency of the evidence. Although C.B. told the district court that she felt Martinez "wasn't guilty," she never suggested that this feeling was based on the evidence adduced at trial. Instead, when the district court questioned C.B., she repeatedly explained that she couldn't go on because she couldn't "be responsible for someone else's life." That explanation—being unable to handle the weight of the decision—has nothing to do with the sufficiency of the evidence. As a result, we can't say that the district court, which is "uniquely situated to make the credibility determinations that must be made whenever a juror's motivations and intentions are at issue," made any clear error. *See Godwin*, 765 F.3d at 1318 (quotations omitted).

The record was sufficient for the district court to find that C.B. could not follow its instructions to deliberate and needed to be dismissed.

### *The District Court Applied the Correct Standard and Made the Appropriate Findings*

Martinez contends that the district court didn't "apply the correct standard" and that "[t]he district court merely found that the juror 'was very upset' and that leaving her on the jury might lead to a hung jury." We disagree.

First, although the district court did not use the magic words "no substantial possibility," it didn't have to. *See Oscar*, 877 F.3d at 1288 n.16 ("A district court is not required to use the magic words 'substantial possibility' or 'beyond a reasonable doubt' when

dismissing a juror."). The district court said that it was "convinced" that C.B. could not "go on with jury service." The "clear import of the district court's ruling was that there was no substantial possibility" that C.B. could participate in deliberations and render a verdict. *Id.* That was sufficient.

Second, the district court did not "merely" find that C.B. "was very upset." The district court found that C.B. was so distraught that she could not fulfill her duties as a juror. C.B. was clear that she could not "be responsible" or "make that decision"; she was "not only weeping" but "having paroxysm[s] of weeping." The district court, unable to calm her down, found that her emotional state prevented her from completing her jury service. The district court's finding was not clearly erroneous. *See Godwin*, 765 F.3d at 1318 (explaining that "[i]t is seldom easy to establish clear error" and is "especially difficult to do so" where "the district court was on the scene" and "viewed the juror[] as [she] described the problem").

Martinez asserts that the district court should have investigated further by asking more questions of C.B. and questioning the other jurors. But "[a]ny challenge to the district court's investigation [of a juror] must be viewed in the context of the broad discretion afforded a trial judge confronted with" the issue. *Augustin*, 661 F.3d at 1129 (quotation omitted). This "discretion extends even to the initial decision of whether to interrogate the jurors." *Id.* (quotation omitted). And we have "caution[ed] district courts to be careful about invading the secrecy of the jury's deliberations

and to err on the side of too little inquiry as opposed to too much." *Abbell*, 271 F.3d at 1304 n.20; *accord Brown*, 996 F.3d at 1186 ("Of course, we do not mean to suggest that a district [court] should ordinarily interview several jurors or conduct a lengthy investigation of alleged juror misconduct."). Because the district court observed C.B. for itself and was "convinced" that she could not "go on with jury service," it was not an abuse of discretion to dismiss her without further investigation. *See United States v. Geffrard*, 87 F.3d 448, 452 (11th Cir. 1996) (affirming the dismissal of a juror, despite the district court's reliance on only a letter from the juror and its refusal to interview any of the other jurors, because the juror's "strong statements in the letter . . . [made] it a certainty that [the] juror could not reach a verdict following the [district court]'s instructions as applied to the facts").

### The Parties Meaningfully Participated in the Decision

Martinez argues that the district court "did not permit meaningful participation of the parties before deciding to dismiss the juror" because it "did not summarize to the parties what [C.B.] said." Martinez is mistaken. The district court told the parties that they "would have the right to be present at [C.B.'s] interview," but Martinez and the government agreed it would be best for the district court to interview her alone. Martinez asked only that the district court "come back and inform [the parties] generally about the conversation." And that is what the district court did.

The district court accurately described what happened in chambers: C.B. was "very upset." The district court did "what [it]

could to calm her down" and talked with her "calmly and hopefully with some sense about her jury service." The district court "explained to her that the decision of the jury" would not be "her personal fault." "[A]ll of us," the district court reminded her, "are called on from time to time to perform unpleasant duties which may involve things which we find personally repugnant." But, even after all of that, the district court was "convinced" that C.B. could not "go on with jury service." Martinez didn't ask for anything more specific.

Martinez now contends that the district court should have told the parties more about what C.B. said. He relies on *Augustin*, pointing out that "there, the district court did not dismiss the juror until after it had disclosed to the parties what she said," "gave them full access to the notes," and "consulted with the parties about what to do." But in *Augustin*, the parties had "full access" because, unlike here, the juror was questioned in open court. 661 F.3d at 1131. Here, Martinez agreed that it was best for the district court to question C.B. privately and then to relay "generally" what "the conversation" was about. The district court did so and, like the district court in *Augustin*, then consulted the parties on what to do.

The district court did not, as Martinez says, prevent "meaningful participation of the parties." In line with *Augustin*, the district court kept the parties in the loop, consulted them as the situation with C.B. developed, and followed the investigative procedure they agreed to. *See id.* at 1131–34. Thus, the district court did not abuse its discretion.

*The District Court Did Not Dismiss C.B. to Break a Deadlock*

Finally, Martinez argues that the district court erred when it expressed "concern[] that [C.B.] would cause a hung jury" because a district court "cannot replace a juror for the purpose of achieving unanimity." We agree that a district court cannot dismiss a juror simply to break a deadlock. *See United States v. Thomas*, 116 F.3d 606, 624 (2d Cir. 1997) ("[A] district court may under no circumstances remove a juror in an effort to break a deadlock."). But that's not what happened here.

The district court said that, "if [C.B.] stay[ed] in the jury room," there would, "at best," be "a hung jury." That is because the district court was "convinced" that C.B. could not "go on with jury service"—i.e., deliberate and render a verdict (any verdict)—not because the rest of the jury had decided one way and she had decided another based on the sufficiency of the evidence. The district court explained that C.B. refused to render a verdict and that her emotional state made her unable to deliberate—not that she was a holdout juror.

Martinez cites *United States v. Hernandez*, 862 F.2d 17 (2d Cir. 1988), but that case does not help him. In *Hernandez*, the district court faced multiple issues with a juror, but decided to "wait and see what [it was] going to do if there [was] a hung jury." *Id.* at 21 (alteration adopted). There was a hung jury, and then the district court dismissed the juror. *Id.* at 22. The Second Circuit reversed because the district court dismissed the juror "[o]nly when the jury deadlocked." *Id.* at 23. Here, the district court did not take

this "wait and see" approach.  It removed C.B. right after finding that she could not follow its instructions to deliberate.  That was not an abuse of discretion.

## CONCLUSION

Because the district court didn't abuse its discretion in dismissing C.B., we affirm Martinez's convictions.

**AFFIRMED.**